## UNITED STATES v. LANZA ET AL.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF WASHINGTON.

No. 39. Argued November 23, 1922.—Decided December 11, 1922.

1. The second section of the Eighteenth Amendment, declaring " The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation," means that power to take legislative measures to make the policy of the amendment effective shall exist in Congress in respect of the territorial limits of the United States, and that, at the same time, the like power of the several States within their territorial limits shall not cease to exist. P. 381.

2. The Amendment did not displace or cut down state laws consistent with it.   P. 381.
3. The Amendment is not, properly speaking, the source of the State prohibitory power, but, rather, its effect is to put an end to restrictions on the State's power arising from the Federal Constitution, and to leave the State free to enact prohibition laws applying to all transactions within her limits.   P. 381.
4. When the same act is an offense against both state and federal governments, its prosecution and punishment by the latter after prosecution and punishment by the former, is not double jeopardy, within the Fifth Amendment.   P. 382.
5. In the absence of special provision by Congress to the contrary, conviction and punishment in a state court under a state law for making, transporting and selling intoxicating liquors, is not a bar to a prosecution in a court of the United States under the National Prohibition Law, for the same acts.   P. 385.

268 Fed. 864, reversed.

ERROR to an order of the District Court, sustaining a special plea in bar and dismissing five counts of an indictment.

*Mr. Solicitor General Beck*, with whom *Mr. Alfred A. Wheat*, Special Assistant to the Attorney General, was on the briefs, for the United States.

*Mr. John F. Dore* for defendants in error.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This is a writ of error by the United States under the Criminal Appeals Act (c. 2564, 34 Stat. 1246), to reverse an order of the District Court for the Western District of Washington dismissing five counts of an indictment presented against the defendants in error April 28, 1920. The first of these charged the defendants with manufacturing intoxicating liquor, the second with transporting it, the third with possessing it, and the fourth and fifth with having a still and material designed for its manufacture,

about April 12, 1920, in violation of the National Pro-
hibition Act (c. 85, 41 Stat. 305). The defendants filed a
special plea in bar setting out that on April 16, 1920, an
information was filed in the Superior Court of Whatcom
County, Washington, charging the same defendants with
manufacturing, transporting and having in possession the
same liquor, and that on the same day a judgment was en-
tered against each defendant for $250 for manufacturing,
$250 for transporting, and $250 for having in possession
such liquor. The information was filed under a statute of
Washington in force before the going into effect of the
Eighteenth Amendment, and passage of the National
Prohibition Act. (Remington's Codes & Stats., § 6262,
as amended by Session Laws 1917, c. 19, p. 46.) The
Government demurred to the plea. The District Court
sustained the plea and dismissed the five counts. *United
States* v. *Peterson,* 268 Fed. 864. No point is made by
the Government in the assignments of error that counts
four and five, for having a still and material in possession,
were not covered by the information, and judgment by
the state court.

The Eighteenth Amendment is as follows:

" Section 1. After one year from the ratification of this
article the manufacture, sale, or transportation of intoxi-
cating liquors within, the importation thereof into, or the
exportation thereof from the United States and all terri-
tory subject to the jurisdiction thereof for beverage pur-
poses is hereby prohibited.

" Sec. 2. The Congress and the several States shall have
concurrent power to enforce this article by appropriate
legislation."

The defendants insist that two punishments for the
same act, one under the National Prohibition Act and the
other under a state law, constitute double jeopardy under
the Fifth Amendment; and in support of this position it is
argued that both laws derive their force from the same

authority,—the second section of the Amendment,—and therefore that in principle it is as if both punishments were in prosecutions by the United States in its courts.

Consideration of this argument requires an analysis of the reason and purpose of the second section of the Amendment. We dealt with both sections in the *National Prohibition Cases,* 253 U. S. 350. The conclusions of the Court, relevant here, are Nos. 6, 7, 8 and 9.

" 6. The first section of the Amendment—the one embodying the prohibition—is operative throughout the entire territorial limits of the United States, binds all legislative bodies, courts, public officers and individuals within those limits, and of its own force invalidates every legislative act—whether by Congress, by a state legislature, or by a territorial assembly—which authorizes or sanctions what the section prohibits.

" 7. The second section of the Amendment—the one declaring ' The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation '—does not enable Congress or the several States to defeat or thwart the prohibition, but only to enforce it by appropriate means.

" 8. The words ' concurrent power ' in that section do not mean joint power, or require that legislation thereunder by Congress, to be effective, shall be approved or sanctioned by the several States or any of them; nor do they mean that the power to enforce is divided between Congress and the several States along the lines which separate or distinguish foreign and interstate commerce from intrastate affairs.

" 9. The power confided to Congress by that section, while not exclusive, is territorially coextensive with the prohibition of the first section, embraces manufacture and other intrastate transactions as well as importation, exportation and interstate traffic, and is in no wise dependent on or affected by action or inaction on the part of the several States or any of them. '

The Amendment was adopted for the purpose of establishing prohibition as a national policy reaching every part of the United States and affecting transactions which are essentially local or intrastate, as well as those pertaining to interstate or foreign commerce. The second section means that power to take legislative measures to make the policy effective shall exist in Congress in respect of the territorial limits of the United States and at the same time the like power of the several States within their territorial limits shall not cease to exist. Each State, as also Congress, may exercise an independent judgment in selecting and shaping measures to enforce prohibition. Such as are adopted by Congress become laws of the United States and such as are adopted by a State become laws of that State. They may vary in many particulars, including the penalties prescribed, but this is an inseparable incident of independent legislative action in distinct jurisdictions.

To regard the Amendment as the source of the power of the States to adopt and enforce prohibition measures is to take a partial and erroneous view of the matter. Save for some restrictions arising out of the Federal Constitution, chiefly the commerce clause, each State possessed that power in full meast     or to the Amendment, and the probable purpose of declaring a concurrent power to be in the States was to negative any possible inference that in vesting the National Government with the power of country-wide prohibition, state power would be excluded. In effect the second section of the Eighteenth Amendment put an end to restrictions upon the State's power arising out of the Federal Constitution and left her free to enact prohibition laws applying to all transactions within her limits. To be sure, the first section of the Amendment took from the States all power to authorize acts falling within its prohibition, but it did not cut down or displace prior state laws not inconsistent with it. Such laws derive their force, as do all new ones consistent with

it, not from this Amendment, but from power originally belonging to the States, preserved to them by the Tenth Amendment, and now relieved from the restriction heretofore arising out of the Federal Constitution. This is the *ratio decidendi* of our decision in *Vigliotti* v. *Pennsylvania,* 258 U. S. 403.

We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject-matter within the same territory. Each may, without interference by the other, enact laws to secure prohibition, with the limitation that no legislation can give validity to acts prohibited by the Amendment. Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.

It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each. The Fifth Amendment, like all the other guaranties in the first eight amendments, applies only to proceedings by the Federal Government, *Barron* v. *Baltimore,* 7 Pet. 243, and the double jeopardy therein forbidden is a second prosecution under authority of the Federal Government after a first trial for the same offense under the same authority. Here the same act was an offense against the State of Washington, because a violation of its law, and also an offense against the United States under the National Prohibition Act. The defendants thus committed two different offenses by the same act, and a conviction by a court of Washington of the offense against that State is not a conviction of the different offense against the United States and so is not double jeopardy.

This view of the Fifth Amendment is supported by a long line of decisions by this Court. In *Fox* v. *Ohio,* 5 How. 410, a judgment of the Supreme Court of Ohio was under review. It affirmed a conviction under a state law

punishing the uttering of a false United States silver dollar. The law was attacked as beyond the power of the State. One ground urged was that, as the coinage of the dollar was entrusted by the Constitution to Congress, it had authority to protect it against false coins by prohibiting not only the act of making them but also the act of uttering them. It was contended that if the State could denounce the uttering, there would be concurrent jurisdiction in the United States and the State, a conviction in the state court would be a bar to prosecution in a federal court, and thus a State might confuse or embarrass the Federal Government in the exercise of its power to protect its lawful coinage. Answering this argument, Mr. Justice Daniel for the Court said (p. 435):

"It is almost certain, that, in the benignant spirit in which the institutions both of the state and federal systems are administered, an offender who should have suffered the penalties denounced by the one would not be subjected a second time to punishment by the other for acts essentially the same, unless indeed this might occur in instances of peculiar enormity, or where the public safety demanded extraordinary rigor. But were a contrary course of policy and action either probable or usual, this would by no means justify the conclusion, that offences falling within the competency of different authorities to restrain or punish them would not properly be subjected to the consequences which those authorities might ordain and affix to their perpetration."

This conclusion was affirmed in *United States* v. *Marigold,* 9 How. 560, 569, where the same Justice said that "the same act might, as to its character and tendencies, and the consequences it involved, constitute an offence against both the State and Federal Governments, and might draw to its commission the penalties denounced by either, as appropriate to its character in reference to each."

The principle was reaffirmed in *Moore* v. *Illinois,* 14 How. 13; in *United States* v. *Cruikshank,* 92 U. S. 542, 550, 551; in *Ex parte Siebold,* 100 U. S. 371, 389, 390, 391; in *Cross* v. *North Carolina,* 132 U. S. 131, 139; in *Pettibone* v. *United States,* 148 U. S. 197, 209; in *Crossley* v. *California,* 168 U. S. 640, 641; in *Southern Ry. Co.* v. *Railroad Commission of Indiana,* 236 U. S. 439; in *Gilbert* v. *Minnesota,* 254 U. S. 325, 330, and, finally, in *McKelvey* v. *United States, ante,* 353.

In *Southern Ry. Co.* v. *Railroad Commission of Indiana, supra,* Mr. Justice Lamar used this language (p. 445):

"In support of this position numerous cases are cited which, like *Cross* v. *North Carolina,* 132 U. S. 131, hold that the same act may constitute a criminal offense against two sovereignties, and that punishment by one does not prevent punishment by the other. That doctrine is thoroughly established. But, upon an analysis of the principle on which it is founded, it will be found to relate only to cases where the act sought to be punished is one over which both sovereignties have jurisdiction. This concurrent jurisdiction may be either because the nature of the act is such that at the same time it produces effects respectively within the sphere of state and federal regulation and thus violates the laws of both; or, where there is this double effect in a matter of which one can exercise control but an authoritative declaration that the paramount jurisdiction of one shall not exclude that of the other."

These last words are peculiarly appropriate to the case presented by the two sections of the Eighteenth Amendment. The court below is the only District Court which has held conviction in a state court a bar to prosecution for the same act under the Volstead Law. *United States* v. *Holt,* 270 Fed. 639; *United States* v. *Bostow,* 273 Fed. 535; *United States* v. *Regan,* 273 Fed. 727; *United States* v. *Ratagczak,* 275 Fed. 558.

Counsel for defendants in error invokes the principle that, as between federal and state jurisdictions over the same prisoner, the one which first gets jurisdiction may first exhaust its jurisdiction to the exclusion of the other. *Ponzi* v. *Fessenden,* 258 U. S. 254. This is beside the point and has no application. The effect of the ruling of the court below was to exclude the United States from jurisdiction to punish the defendants after the state court had exhausted its jurisdiction and when there was no conflict of jurisdiction.

If Congress sees fit to bar prosecution by the federal courts for any act when punishment for violation of state prohibition has been imposed, it can, of course, do so by proper legislative provision; but it has not done so. If a State were to punish the manufacture, transportation and sale of intoxicating liquor by small or nominal fines, the race of offenders to the courts of that State to plead guilty and secure immunity from federal prosecution for such acts would not make for respect for the federal statute or for its deterrent effect. But it is not for us to discuss the wisdom of legislation, it is enough for us to hold that, in the absence of special provision by Congress, conviction and punishment in a state court under a state law for making, transporting and selling intoxicating liquors is not a bar to a prosecution in a court of the United States under the federal law for the same acts.

*Judgment reversed with direction to sustain the demurrer to the special plea in bar of the defendants and for further proceedings in conformity with this opinion.*