Jose **RAMIREZ**, Meyer Goodman, Michael Gullon, Bill H. Freeman and Robert E. Miller, Appellants,

v.

Refugio Gonzalez **LOZOYA**, Appellee.

No. 15468.

United States Court of Appeals Ninth Circuit.

Feb. 20, 1958.

Rehearing Denied March 26, 1958.

Laughlin E. Waters, U. S. Atty., Lloyd F. Dunn, Joseph F. Bender, Asst. U. S. Attys., Los Angeles, Cal., for appellants.

David C. Marcus, Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES and HAMLEY, Circuit Judges.

CHAMBERS, Circuit Judge.

By reason of the fact that sometime subsequent to arrest a prisoner is physically abused by two of a group of arresting federal officers, is the bloodstream of the administration of justice so infected that the prisoner is entitled to absolution as to an alleged state crime?

No contention is made that any confession or a single admission was obtained, and we shall override the trial court's findings only so far as they are without evidence to support them.

On May 29, 1956, in the United States District Court for the Southern District of California the grand jury returned a two count indictment against Refugio Gonzalez Lozoya for violation of the narcotics statutes of the United States. The charge involved (1) transfer of nine and one-half pounds of marihuana without a written order on a form issued by the Secretary of the Treasury and (2) acquiring the same marihuana without having paid the required excise tax thereon.

Lozoya was arrested at the scene of the alleged crimes at Montebello in Los Angeles County on May 17, 1956. He was taken by agents Gullon and Miller to the office of the bureau of narcotics in the post office building in Los Angeles. There he was fingerprinted, but what else went on at the office is disputed. Lozoya claims he was beaten by officers Gullon and Miller, that he suffered a broken eardrum, one black eye and bruises. Lozoya places each of the two officers in the room with him alone at separate times. Miller stoutly denies that he struck Lozoya. Gullon admits that he struck him, but says it was defensively and that it occurred when he started to fingerprint the prisoner. He insists that Lozoya attacked him and that he had to subdue him.

At the trial, the district judge seems to have given credence to Lozoya's version of the incident in the office of the bureau. And, the judge, sitting without a jury, at the conclusion of the trial on July 20, 1956, found the defendant not guilty on both counts. It is not in our purview to review that decision. On paper, the decision appears contrary to the weight of the evidence tested by "beyond a reasonable doubt." Of course, this court did not see the witnesses.

The trial done, the marihuana which had been introduced in evidence was returned to the treasury agents by the clerk of the court.

Disappointed with the judgment of acquittal in federal court, agent Jose Ramirez,[1] one of the principal agents involved in making the case against Lozoya, signed a complaint on August 10, 1956, in a California state court at Los Angeles, charging Lozoya with a violation of the California state health and safety code for the possession of the same marihuana on the same date as was involved in the federal case.

Lozoya then, under the same number and title of his concluded criminal case in the district court, filed a petition for a restraining order as to Jose Ramirez, Meyer Goodman, Michael Gullon, Bill H. Freeman, and Robert E. Miller, all being employees of the bureau of narcotics who had been witnesses against him at his trial.[2] Further, an order for the return of the marihuana to the clerk of the district court and its destruction was sought.

The main burden of the petition was double jeopardy, although it did mention

1. The elapse of about three weeks from the federal acquittal to the filing of the state charges would indicate prima facie that the later action had the approval of the superiors of Ramirez. That approval is here immaterial.

2. The petition for the restraining order was filed on January 4, 1957, almost five months after the state charges were filed. Lozoya has been represented at all times material by the same attorney. The urgency of the moment was the approaching preliminary hearing in the Los Angeles municipal court. The normal ten days for the government to respond to the petition to suppress was shortened to five days by the court. The hearing on the petition was held on January 10.

the fifth and fourteenth amendments to the United States Constitution.

A brief hearing was held by the trial court on the petition and response. No new evidence was received. At the conclusion of the hearing, the trial judge read and filed an order which he had prepared in advance of the hearing, which was as follows:

"Order Restraining Federal Officers From Testifying In State Criminal Proceedings

"Application for an injunction has been duly made, and the Court finding that defendant Refugio Gonzales Lozoya, from the time of his first detection, and including his arrest, and interrogation and search and seizure of the subject of the offense consisting of nine and one-half pounds of marihuana, incarceration and interrogation, was in fact deprived of due process of law and of the American tradition of fair play that included beatings and torture by agents and employees of the United States Government, to-wit: Jose Ramirez, Meyer Goodman, Michael Gullon, Bill H. Freeman and Robert E. Miller; and good cause appearing,

"It Is Hereby Ordered that said Jose Ramirez, Meyer Goodman, Michael Gullon, Bill H. Freeman and Robert E. Miller are hereby permanently enjoined from testifying concerning the subject of said detection, apprehension, arrest, interrogation and the search and seizure of said nine and one-half pounds of marihuana, and said parties, together with their agents, associates and any parties having the said nine and one-half pounds of marihuana are ordered to forthwith return and deposit the same with the Clerk of this Court Room, and all persons are restrained from order-ing and compelling the parties enjoined herein, from testifying in any proceeding.

"Dated: This 10th day of January, 1957.
    "/s/ Thurmond Clarke,
            United States District
                Judge."

It is significant that the trial court just before announcing decision said:

"* * * This court feels on this matter * * * that when the court has tried this defendant and acquitted the defendant, that should end the matter."

and, then repeated,

"Well, I feel that the defendant having been tried in the federal court and having been acquitted, that should end the matter."

While perhaps it must be taken here that the trial judge has determined that agents Gullon and Miller did abuse the prisoner, yet the preamble to the order is inaccurate. No evidence was received at any time that Jose Ramirez, Meyer Goodman or Bill H. Freeman did anything to mistreat the prisoner.[3] So it is regrettable that the court has made a permanent record that these three were so involved. Also, a fair reading of the order implies that the *arrest* and the *search for* and *seizure of* the contraband were infected with offensive police methods. The record does not lend support to such a conclusion.

The order does not say, and it could not properly say, that the federal case or the state case to support a conviction needs any testimony as to what occurred at the federal building after the arrest. The interrogation produced nothing. The defendant during his trial insisted on testifying as to the alleged post arrest beating and upon cross-examining witnessess about it. There was no motion during (or prior to) the trial to suppress

---

3. If Gullon and Miller at separate times did beat Lozoya, on the present record there can be no finding it was done by the direction or under the supervision of Ramirez, Goodman or Freeman. Generally, Lozoya was alone in a room at the post office building with first one officer and then another.

any testimony or tangible evidence. If otherwise sustainable, the concluding phrase of the order, "all persons are restrained from ordering and compelling the parties enjoined herein, from testifying in any proceeding," could not remain.

We have concluded that the whole order cannot stand. But before proceeding to our ruling, we believe it appropriate to make some comments generally on the administration of justice. We must look back at the record of the July trial of the charges against Lozoya. The defendant was allowed the greatest latitude of cross-examination. The claimed abuse of Lozoya at the time of interrogation seemingly was immaterial to the trial. But the defendant wanted to "try" the officers for what strategical value it had. There was no attempt to bring any independent witness who might have shed some light on the claim that Lozoya's hearing had been affected. It might have been possible to have found out about the defendant's ear as it existed before his arrest. Lozoya was in jail for two months between his arrest and the time of his trial. He said he saw the available doctor once, yet he said the ear had been "running," for some time. Perhaps the jail physician could have shed some light on whether there was an injury to the ear on May 17, or on the alleged discharge from the ear. Someone at the county jail in Los Angeles received the prisoner and booked him.[4] Could he testify as to whether Lozoya had a black eye? Were there other people at the county jail who could testify as to his condition on arrival there? However, if the injuries were found to have been sustained there would have been yet the question of who started the rumpus. Were other witnesses to the event available within the bureau? Naturally, the district attorney during the trial, considering the purported beating an improper issue there, made little effort to bring independent witnesses for rebuttal.

It is not suggested that the ordinary trial should be taken up with side issues. We wonder if this wasn't a case for the exercise of a court's inherent powers to get at the truth? Perhaps, not during the trial. But the situation was different when the petition came on to be heard.

Rather than bring witnesses, the district attorney simply met the issues on the petition on legal grounds. And, in our view his contentions were correct. However, one cannot help but have misgivings about how poorly the actual facts were developed before these officers were "branded," three of them without justification. And on a matter foreign to required proof. At the hearing on the petition, the court having its already prepared order in hand, the district attorney did not have much chance to develop the truth of what happened. If one fully accepts the defendant's version, the conduct of Gullon and Miller was shocking. These officers live in a dangerous world, but they must obey the law. We hate to see it determined that they were brutal without an issue properly joined on it and the facts fully presented.

Possibly, on the present record, it would be permissible to enjoin the officers Gullon and Miller [5] from testifying about what went on at the bureau's office after the arrest. We do not decide because such an order is not what Lozoya wants. If he must go to trial, he wants to testify that he was beaten. (The admissibility would be determined by the state court.) So we leave it there, especially in view of the fact no one has ever suggested Lozoya admitted or con-

---

4. The county booking slip shows entries as follows:
   "Recent injury or illness: claims black eye, bruises on right leg."
   "Booked by: R. Dusm."
   "Searched by: Olson."
   Olson and Dusm were not called as witnesses.

5. In Lozoya's briefs the contention is made here for the first time that the alleged abuse of Gullon and Miller was sort of a joint enterprise of all the agents. In our view, the record does not support the idea.

-fessed to anything on the occasion at the bureau office.

The point of double jeopardy, much on the mind of the trial court, is not seriously urged here, if at all. See United States v. Lanza, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314.

The principle of Rea v. United States, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233—illegally obtained evidence—has no application. There just wasn't any illegally obtained evidence. Two agents have been found by the trial court to have attempted illegally to obtain evidence—and failed.[6]

If the federal officer proposes to testify solely with evidence illegally obtained, then Rea requires he be restrained on proper application. If the real tangible evidence—the marihuana—was seized illegally Rea would require that it be withheld from the state. But we see no warrant for a thesis that, if an officer has subsequently mistreated a prisoner, the prisoner is entitled to be excused from a serious crime when no fruit of the mistreatment need be eaten.

Lozoya claims the marihuana was improperly released and can properly be recalled for that reason alone as well as for the purpose of suppressing it. We need not go into the power of a court to recall exhibits, because there was no reason to suppress this marihuana.

We think it not the law that any narcotics seized by federal agents cannot go over to the state court for use as evidence. The statute (21 U.S.C.A. § 198) adjures the Secretary of Treasury to co-operate with the several states. The evidence was properly returned under the district court's local Rule 20(a) to the agents in the bureau of narcotics who are under the Secretary of Treasury. Once returned, 26 U.S.C. § 4745 provides for its ultimate disposition. Meanwhile, it is up to the Secretary of the Treasury to decide what will effect the policy of 21 U.S.C.A. § 198. We are fully aware of 28 U.S.C. § 2463 with respect to property detained under a revenue law. The section gives no one unreviewable power.

Absent the feature of illegally obtained evidence of the Rea case, if the marihuana is again back with the district court clerk, it would appear to be an abuse of discretion for the district court to refuse to let the Secretary of the Treasury cooperate with the state court and take the marihuana there as evidence.

It has been established by the Supreme Court that society must pay the penalty of losing its evidence against persons charged with crime if that evidence has been obtained by the heavy hand of federal officers. The second step, that the prisoner goes free, if the officer lays on a heavy hand, and gains nothing, has not been taken.

The district court order of January 10, 1957, above described, is vacated. If the marihuana has been returned to the clerk, the district court shall order it returned to a properly designated representative of the Secretary of the Treasury.

On Appellee's Petition for Rehearing

PER CURIAM.

Appellee's petition for rehearing overlooks the point overlooked in the district court and overlooked by him here in his original brief: there just never was as to Lozoya any illegally obtained evidence. On the record, he has not contended that there was any illegally obtained evidence. Indeed, on the record, he could not make such a contention. There is no authority for suppressing legally obtained evidence—except the decision below. That this court reverses.

And, the petition is denied.

---

6. None of the majority or dissenting opinions in the Supreme Court on the issue of illegally obtained evidence support the view taken in the district court here. Note, in his opinion in Rea v. United States, supra [350 U.S. 214, 76 S.Ct. 293], Mr. Justice Douglas says, "The case against petitioner in the state court will be made by testimony of the federal agent based on the illegal search and on the evidence seized under the illegal warrant." He was not dealing with the corruption of the blood theory advocated here.