## In re GRAND JURY INVESTIGATION.
### No. M-11-188 (MEL).

United States District Court,
S.D. New York.

April 14, 1988.

---

ENDORSEMENT

LASKER, District Judge.

In this action, Jane Doe and John Doe seek an order prohibiting the government from pursuing an indictment against them for alleged tax violations. They argue first that an indictment against Jane Doe should not be returned because Jane Doe was granted transactional immunity when testifying before a state grand jury; that the federal and state investigations were cooperatively conducted; and that accordingly the state immunity should bar a federal indictment. The Does also request an evidentiary hearing to determine the source of disclosures to the press about matters concerning the grand jury proceeding allegedly made in violation of Fed.R.Crim.P. 6(e), several of which are attributed to the government. As a sanction for this abuse, the Does contend that the grand jury proceeding against them should be terminated.

The government concedes that Jane Doe received transactional immunity for her statements to state investigators made outside and before the grand jury, but contends that the state grant of immunity does not extend to the federal investigation, despite the cooperation between the two offices.[1]

■ Doe has not cited any case and we know of none directly supporting the theory that state grants of immunity should bar federal indictments where the two jurisdictions have conducted a joint investigation. In fact, in the one case in which this same argument was raised, it was rejected. In *United States v. Biaggi*, 675 F.Supp. 790, 805 (S.D.N.Y.1987), the defendant argued that because the grand jury investigation of him was a "joint federal-state effort, his state transactional immunity entitle[d] him to federal transactional immunity as well...." Without elaborating, the court denied the motion, characterizing it as "novel and interesting," but lacking support.[2] 675 F.Supp. at 806.

Doe has failed to advance a persuasive argument that the law is otherwise. Doe

---

1. The prosecuting attorneys of the state and federal jurisdictions have been appointed special assistants of the other jurisdiction; that is, Assistant Attorney Generals have been appointed Special Assistant United States Attorneys, and Assistant United States Attorneys working on the case have been designated Special Assistant Attorney Generals.

2. Because the decision was interlocutory and thus not presently appealable, the Second Circuit has yet to address this argument.

argues that because the Second Circuit has applied state law in federal proceedings in what movants assert are similar contexts, state immunity law should apply in the federal grand jury proceeding. However, the cases cited stand only for the proposition that "where a motion to suppress evidence gathered under a state warrant is made in a federal prosecution [it] must be answered in the first instance by reference to state law." *United States v. Rizzo*, 491 F.2d 215, 217 (2d Cir.) (citing *United States v. Manfredi*, 488 F.2d 588, 589–99 (2d Cir. 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974)), *cert. denied*, 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974). *See also United States v. Sotomayor*, 592 F.2d 1219, 1225 (2d Cir.) (holding that state standards designed to protect individual's rights, if more stringent than federal standards, are to be applied if wiretap issued pursuant to state warrant), *cert. denied*, 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979). It does not follow from this narrow rule that state law concerning the scope of immunity is enforceable in federal proceedings, even those in which the two jurisdictions conducted a joint investigation.

In fact, the law of double jeopardy, an analogy that is more compelling than that invoked by the Does, supports the government's position that the state immunity should not extend to the federal proceeding. The double jeopardy provision of the Fifth Amendment prohibits the *same* sovereign from prosecuting an individual for the same crime; it does not bar a federal prosecution based on the same transaction as a state prosecution. *United States v. Lanza*, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922). Moreover, in *Murphy v. Waterfront Commission*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), when confronted with the question whether a witness

granted immunity under state law could be compelled to give testimony in the state proceeding that could incriminate him under federal law, the Court held that the witness could be required to answer provided such testimony and its fruits were not used against him in federal prosecution. Although *Murphy* did not involve a joint federal-state investigation and thus the question in this case was not directly presented, its holding suggests that state grants of immunity do not extend to federal proceedings.[3]

Absent any authority for Doe's position and given the deference accorded the prosecution of other sovereigns embodied in the double jeopardy clause, the application for an order prohibiting an indictment of Jane Doe, on the ground that she was awarded transactional immunity by the state, is denied.[4]

■ In response to the Does' second argument, the government contends that it is inappropriate to delay the grand jury proceeding and any possible indictment because of alleged government disclosures to the press about the proceeding. As even the Does concede, a strong presumption of regularity attaches to grand jury proceedings, with a heavy showing required to justify interference. *See Ostrer v. Aronwald*, 567 F.2d 551, 553–54 (2d Cir.1977).

Although the burden on the movants is not as great when requesting an evidentiary hearing as when seeking dismissal because of publicity of matters concerning the grand jury, the burden is nonetheless substantial. *In re Grand Jury Investigation (Lance)*, 610 F.2d 202, 219 (5th Cir. 1980). The Does argue that because they have shown that information about matters occurring before the grand jury has been disclosed and that some disclosures have

**3.** Jane Doe has requested an evidentiary hearing to determine whether the federal government has relied on immunized statements she made to state investigators. The request is denied, given Doe's failure to establish a basis for believing that the government is in fact relying on immunized testimony and the government's representation that it has not relied on such statements. Moreover, the government has no interest in proceeding with the grand jury investigation in reliance on immunized testimony if any indictment that may result will only be dismissed because of its conduct.

**4.** The government also contends that, even if the transactional immunity were to extend to the federal investigation, it would not bar the charges that may be issued.

been attributed to the government, they have made a *prima facie* showing that an evidentiary hearing is necessary. *In re Grand Jury Investigation (Lance)*, 610 F.2d 202, 216–20 (5th Cir.1980) (articulating showing required for evidentiary hearing); *In re Grand Jury Investigation (Biaggi)*, No. 87–0163, slip op. at 12 (E.D.N.Y. Feb. 23, 1987) (adopting *Lance* test). [available on WESTLAW, 1987 WL 8073]. However, the court, when evaluating the movants' request, is also, according to the standards adopted in *Lance*, to consider any evidence offered by the government in rebuttal and the extent to which the requested relief interferes with the grand jury process.

The government has denied that any of the information reported in the press stories cited by the Does is attributable to it. Even in *In re Grand Jury Investigation (Biaggi)*, a case relied on heavily by the Does, the court declined to conduct an evidentiary hearing into the source of the leaks, despite the movants' showing of a prima facia case. "Hearings now would necessarily draw away the attention of government attorneys and agents who have worked on the investigation and thereby delay the grand jury's progress. More importantly, a hearing at this time would reveal the identity of agents and witnesses and thereby create a substantial risk of compromising the grand jury's ability to effectively conclude its investigation." [5] *In re Grand Jury Investigation (Biaggi)* at 18–19. Similarly, a hearing in this case at this time would threaten the integrity of the grand jury and thwart its progress.[6] *See In re Grand Jury of Hugle)*, 754 F.2d 863, 865 (9th Cir.1985) (undue interference with grand jury impedes its authority and the administration of criminal laws).

Finally, denial of the request—both for an order prohibiting an indictment of Jane Doe because of her grant of state immunity and for an evidentiary hearing inquiring into the sources of publicity leaks—will not leave the Does without remedy. The Does can challenge the propriety of the indictment and the prosecutor's conduct after the indictment. *See Lance*, 610 F.2d at 213 (return of indictment does not moot request that grand jury be dismissed or that contempt sanctions be imposed). As stated in *Ostrer*, "[i]f an indictment is ultimately returned, appellants will have plenty of time to seek proof of the motives of the Government's attorney." *Ostrer*, 567 F.2d at 553. *See also In re Grand Jury Investigation of Hugle*, 754 F.2d at 864 (noting that courts may exercise control over grand jury proceedings if necessary to protect the rights of a witness or nonwitness *if* the violation cannot be corrected at a later stage) (emphasis added).

Although the Does' request is denied, they have, in pointing to news stories disclosing grand jury matters, raised a matter of considerable concern. Leaks of pending indictments have become so commonplace as to make a mockery of the secrecy provisions of the grand jury, provisions meant to protect the rights and reputations of innocent individuals. This ruling is not intended to contribute to this seemingly nonchalant attitude toward grand jury matters, for Fed.R.Crim.P. 6(e) and the principles it seeks to preserve are not to be taken lightly.

The movants' request is denied.

It is so ordered.

---

5. In this case, the jurors had been polled to see if they had been exposed to any of the publicity and, if so, whether it would prejudice them.

6. Interference with the grand jury is generally disfavored. *See United States v. Calandra*, 414 U.S. 338, 349, 94 S.Ct. 613, 621, 38 L.Ed.2d 561 (1974) (refusing to extend exclusionary rule to grand jury proceedings because to do so would "halt the orderly progress of an investigation and might necessitate extended litigation of is-

sues only tangentially related to the grand jury's primary objective") (footnote omitted); *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408–09, 100 L.Ed. 397 (1956) (holding that indictment could be premised on hearsay because result of a contrary rule "would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury").