**UNITED STATES of America, Plaintiff,**

**v.**

**Rafael SANCHEZ and Luis Sanchez, Defendants.**

**No. 89–10034–CR–KING.**

United States District Court, S.D. Florida.

July 5, 1990.

---

216

Mary K. Butler, Frank Tamen, Asst. U.S. Attys., for plaintiff.

Stephen M. Pave, South Miami, Fla., for defendants.

ORDER SETTING SENTENCING
GUIDELINES' BASE
OFFENSE LEVEL

JAMES LAWRENCE KING, Chief Judge.

This cause comes before the court on defendants' objections to their sentencing guidelines score as calculated by the United States Probation Department, and the Government's response thereto. The court will herein determine the base offense level

to apply to defendants' conduct of which the jury found them guilty in Count I. For the reasons given below, the court holds that defendants' offense level must be computed as based on an underlying offense of murder.

Under § 1B1.2 of the United States Sentencing Commission Guidelines Manual, the court must first "[d]etermine the offense guideline section in Chapter Two (Offense Conduct) most applicable to the offense of conviction (*i.e.*, the offense conduct charged in the count of the indictment or information of which the defendant was convicted) ..." United States Sentencing Commission, *Guidelines Manual*, § 1B1.2 (Nov.1989). In this case, defendants were convicted under 18 U.S.C. § 1958 (1984 & Supp.1990), the federal murder-for-hire statute. That statute provides

> Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility in interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, shall be fined not more than $10,000 or imprisoned not more than twenty years, or both; and if death results, shall be subject to imprisonment for any term of years or for life, or shall be fined not more than $50,000 or both.

18 U.S.C. § 1958 (1984 & Supp.1990) (as amended and renumbered, 1988).

Section 2E1.4 of the Sentencing Guidelines specifically sets forth the base offense level for 18 U.S.C. § 1958, Use of Interstate Commerce Facilities in the Commission of Murder–For–Hire, the crime for which the jury convicted defendants in Count I of the indictment. That section counsels the court to apply the greater of level 23 or "the offense level applicable to the underlying unlawful conduct." United States Sentencing Commission, *Guidelines Manual*, § 2E1.4 (Nov. 1989). The application notes to § 2E1.4 also enumerate that "[i]f the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used." U.S.S.G. § 2E1.4 application note 1. The application note does not intimate that the court should not consider murder as contained in the federal murder statute as constituting underlying unlawful conduct, however. Application note one applies if the underlying conduct violates state law; it does not prevent the court from looking to federal law to define the underlying unlawful conduct where the conduct also violates federal law. The court will examine both the federal and state murder statutes to determine whether they encompass defendants' conduct; if either or both of those statutes do define defendants' underlying unlawful conduct, then the court must apply the sentencing guideline base offense level for the federal murder statute, 18 U.S.C. § 1111, to defendants.

## I. FEDERAL MURDER STATUTE

■ The underlying unlawful conduct here violates the federal murder statute, 18 U.S.C. § 1111 (1984 & Supp.1990). That section, in pertinent part, defines first degree murder as "the unlawful killing of a human being with malice aforethought ... [and] perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed ..." 18 U.S.C. § 1111 (1984 & Supp.1990). The facts of this case satisfy this definition: they jury found that defendants premeditatedly designed to kill Nelson Seda, and Brian Williams was in fact killed. The base offense level for 18 U.S.C. § 1111 is set by the Guidelines as 43. U.S.S.G. § 2A1.1. Therefore, the court should apply this base offense level to defendants in this case as murder constitutes the underlying unlawful conduct of the offense for which they were convicted. Defendants object, however, on grounds of double jeopardy and collateral estoppel. The court will address those objections below in Parts III and IV, after it examines whether state law also encompasses defendants' underlying unlawful conduct.

## II. FLORIDA STATE MURDER STATUTE

■ In addition to contravening the federal murder statute, defendants' underlying conduct violates Florida law. Therefore defendants' base offense level should be calculated with regard to the federal offense most analogous to that state law, 18 U.S.C. § 1111, in accord with § 2E1.4 application note 1. The Government advances that Florida Statutes § 782.04, which defines situations giving rise to first-degree murder and felony murder, applies to the facts and circumstances of this case. That statute defines first-degree murder as "[t]he unlawful killing of a human being: 1. When perpetrated from a premeditated design to effect the death of the person killed or any human being; or 2. When committed by a person engaged in the perpetration of, or in the attempt to perpetrate, any: ... (j) unlawful throwing, placing, or discharging of a destructive device or bomb ..." Fla.Stat. § 782.04 (1989). Defendants make several objections to § 782.04 as irrelevant to their case; they first specifically argue that Brian Williams' death was not "unlawful."

"Unlawful" death occurs, according to Florida law, when defendant does not seek to exculpate himself or justify his crime, as the Florida Statutes define those defenses. For instance, the Florida Supreme Court has held that "because murder constitutes the *unlawful* killing of a human being, the court's failure to explain that excusable and justifiable homicide were lawful killings rendered the [jury] instruction fundamentally defective." *Banda v. State*, 536 So.2d 221, 223 (Fla.1988) (emphasis in original). The term unlawful appears in the murder statute to allow for operation of affirmative defenses of exculpation or justification. Because defendants do not present any affirmative defenses of exculpation or justification, their contention that Brian Williams' death was "lawful" is incorrect.

Defendants further object that their conduct does not fall under the Florida felony-murder statute as they were not present at the scene of the killing, and that the victim died by his own hand. In *State v. Dene*, 533 So.2d 265, 270 (1988), the Florida Supreme Court held that a principal in the first degree was guilty of first-degree felony-murder committed by her co-felons although the principal was not present at the scene of the crime. Because defendants here qualify as principals in the first degree for commission of the felony, *see G.C. v. State*, 407 So.2d 639, 640 (Fla.App. 3d Dist.1981), any death which results from that felony constitutes felony-murder for which a court may hold defendants liable.

The conduct of which the jury adjudged defendants guilty under the federal murder-for-hire statute also satisfies that portion of the Florida murder statute which proscribes premeditated murder. As stated above, Florida Statutes § 782.04 (1989) punishes as first-degree premeditated murder "[t]he unlawful killing of a human being: 1. When perpetrated from a premeditated design to effect the death of the person killed or any human being ..." Fla.Stat. § 782.04 (1989). First, Brian Williams' death was unlawful. (See discussion above.) Second, the jury found that defendants in this case intended to kill Nelson Seda. These two elements taken together with the facts of this case establish that defendants' conduct falls under the Florida first-degree premeditated murder statute.

Finally, defendants' double jeopardy and collateral estoppel objections carry no more force for violations of state than for those of federal law (see discussion below in Parts III and IV).

## III. DOUBLE JEOPARDY

Double jeopardy bars the subsequent prosecution of the same offensive conduct by the same sovereign. *See Heath v. Alabama*, 474 U.S. 82, 87, 106 S.Ct. 433, 436, 88 L.Ed.2d 387 (1985). The dual sovereignty doctrine, however, allows successive prosecutions by two sovereigns for the same conduct. *Id.* The underlying premise of the doctrine stems from the idea that "[w]hen a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has com-

mitted two distinct 'offenses.'" *Id.* (quoting *United States v. Lanza,* 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922)). The Supreme Court has held that "the crucial determination [is] whether the two entities that seek successively to prosecute a defendant for the same course of conduct can be termed separate sovereigns." *Id.*

■ While the Supreme Court once held that Puerto Rico does not constitute a distinct sovereign for double jeopardy purposes, *People of Puerto Rico v. Shell,* 302 U.S. 253, 58 S.Ct. 167, 82 L.Ed. 235 (1937), that decision took place prior to passage of the Puerto Rican Federal Relations Act, Pub.L. No. 600, 64 Stat. 319 (1950) (the "Act"), the statute that established Puerto Rico as a Commonwealth rather than a territory. The operation of the Act serves to override the Court's holding in *Shell.* For instance, the First Circuit specifically addressed whether double jeopardy applies to criminal cases brought in the Commonwealth of Puerto Rico. *U.S. v. Lopez Andino,* 831 F.2d 1164 (1st Cir.1987), *cert. denied,* 486 U.S. 1034, 108 S.Ct. 2018, 100 L.Ed.2d 605 (1988). The court there held that Puerto Rico is like a state for double jeopardy purposes because of the operation of the Act which established Puerto Rico as a Commonwealth. *See id.* The court adopts the reasoning of the First Circuit in *Lopez Andino* and holds that Puerto Rico is a distinct sovereign for double jeopardy analysis. *Cf. Cordova & Simonpietri Ins. v. Chase Manhattan Bank,* 649 F.2d 36 (1st Cir.1981).

■ Double jeopardy does not apply in this case because Puerto Rico and the federal government or Puerto Rico and the State of Florida may each prosecute the offensive conduct of which the jury found defendants guilty in this case. Defendants intended to kill and put the killing instrument into commerce in Florida. Florida could prosecute this conduct under its homicide statute. *See* Fla.Stat. § 782.04; *Lane v. State,* 388 So.2d 1022 (Fla.1980). Moreover, the federal government may prosecute the offensive conduct under the federal murder-for-hire statute. See 18 U.S.C. § 1958 (1984 & Supp.1990). There-

fore, double jeopardy neither bars the federal prosecution of these defendants, nor any sentencing analogy drawn to the federal murder statute, 18 U.S.C. § 1111, nor the sentencing analogy drawn to the Florida homicide statute, Florida Statutes § 782.04 (1989).

## IV. COLLATERAL ESTOPPEL

■ To apply collateral estoppel to these defendants, this trial must involve the same parties as were involved in the Commonwealth of Puerto Rico trial. *See Standefer v. U.S.,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). Because the court holds that the Commonwealth of Puerto Rico and the United States and/or the State of Florida constitute distinct sovereigns, collateral estoppel does not apply in this case.

## V. CONCLUSION

■ Defendants' conduct may be punished by Florida law as first-degree murder, therefore the court may look to the analogous federal offense of first-degree murder—18 U.S.C. § 1111—to determine defendants' sentencing guidelines base offense level. Moreover, defendants' underlying conduct falls directly under 18 U.S.C. § 1111 in accord with the first part of § 2E1.4 of the Guidelines. The base offense level for 18 U.S.C. § 1111 is 43. The court will use 43 as the base offense level for sentencing defendants for their conviction under 18 U.S.C. § 1958. The court rejects defendants' double jeopardy and collateral estoppel objections. Accordingly, after careful consideration and review, the court

ORDERS and ADJUDGES that the base offense level from which the court shall compute defendants' sentence for their conduct in Count I is 43.

DONE and ORDERED.