**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Michael L. ENAS, Defendant–Appellee.**

**No. 99–10049.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1999

Decided Feb. 28, 2000

Diane Humetewa, Assistant United States Attorney, Phoenix, Arizona; and Richard A. Friedman, United States Department of Justice, Washington, D.C., for the plaintiff-appellant.

Sigmund G. Popko, Assistant Federal Public Defender, Phoenix, Arizona, for the defendant-appellee.

Before: Bright,* Pregerson, and W. Fletcher, Circuit Judges.

BRIGHT, Circuit Judge:

An Indian tribal court convicted Michael Enas, a non-member Indian, on two charges of assault. When the government of the United States subsequently indicted Enas for the same crimes, the district court dismissed the indictment holding that the second prosecution would violate the Fifth Amendment's prohibition against double jeopardy. The government appeals.

The outcome of this case depends on whether the tribal court's criminal jurisdiction over Michael Enas, a non-member Indian, rests on inherent tribal sovereignty or, alternatively, whether the federal government has delegated that power to the tribe. If the tribe is exercising sovereign power, there is no double jeopardy because

---

* The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

the prosecutions emanate from two different sovereigns. However, if the tribe is exercising a federally delegated power of criminal jurisdiction, the Double Jeopardy Clause will bar the federal prosecution because both prosecutions would stem from the same sovereign entity: the federal government. The district court held that the tribe's power to prosecute Enas derived from and was delegated by the federal government and, therefore, that the Double Jeopardy Clause barred the second prosecution. We disagree and reverse.

## I. BACKGROUND

Michael L. Enas is an enrolled member of the San Carlos Apache Tribe. On August 18, 1994, Enas stabbed Joseph Kessay while on land governed by the White Mountain Apache Tribe ("Tribe"). The Tribe prosecuted Enas for assault with a deadly weapon and for assault with intent to cause serious bodily injury, violations of Tribal Code §§ 2.4 and 2.6, respectively. Enas pled guilty to both charges, and the tribal court sentenced him to 180 days in prison, with a fine of $1180.

On June 21, 1995, the government indicted Enas for assault with a dangerous weapon and assault resulting in serious bodily injury pursuant to 18 U.S.C. §§ 113(a)(3) and (6), and § 1153. The district court dismissed the indictment, relying on *Means v. Northern Cheyenne Tribal Court,* 154 F.3d 941, 946 (9th Cir.1998). *Means* held that certain 1990 amendments to the Indian Civil Rights Act ("ICRA") may not be applied retroactively. The 1990 amendment at issue in both this case and in *Means,* is § 1301(2), which provides that the "powers of self-government" of the Indian tribes means "the inherent power of Indian tribes, hereby recognized and affirmed, to exercise criminal jurisdiction over all Indians." 25 U.S.C. § 1301(2). In its decision, the *Means* court said, "The only way to treat the 1990 ICRA amendments is as an affirmative delegation of jurisdiction...." 154 F.3d at 946.

Based on that statement from *Means,* the district court concluded that the power of an Indian tribe to conduct criminal prosecutions—at least where, as here, that power is exercised over non-member Indians—is a power derived from the federal government rather than an attribute of inherent tribal authority. Accordingly, the district court refused to apply the so called "dual sovereignty doctrine" and ruled that the Double Jeopardy Clause bars the government from prosecuting Enas in federal court.

## II. DISCUSSION

■ Under the Double Jeopardy Clause, the government may not generally prosecute a defendant in a second proceeding when that defendant has been previously convicted, or acquitted, of the same crime. *See North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969). The "dual sovereignty doctrine," however, allows two independent sovereign entities to prosecute an offender separately for a single offense. *See Heath v. Alabama,* 474 U.S. 82, 90, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985). The rationale behind the dual sovereignty doctrine is this: if, in the course of a single crime, an individual breaks the laws of two distinct sovereigns, the person has offended both and has committed two distinct offenses for which each sovereign has an independent right to prosecute him. *See United States v. Lanza,* 260 U.S. 377, 382, 43 S.Ct. 141, 67 L.Ed. 314 (1922).

■ At the heart of the doctrine is the degree of separation between the two presumptive sovereigns. If the first sovereign's power emanates from a source independent of that which gives rise to the second sovereign's power, then the doctrine applies and the Double Jeopardy Clause is not violated when both sovereigns prosecute. If, on the other hand, the second sovereign's power is merely derivative of the first's, then one or the other may prosecute but not both.

■ The status of federal prosecutions vis-a-vis state and foreign prosecutions is well settled. *See Moore v. Illinois*, 55 U.S. (14 How.) 13, 14, 14 L.Ed. 306 (1852) (sequential prosecution for same offense by state and federal governments not barred by double jeopardy); *United States v. Fontanez*, 869 F.2d 180, 181–83 (2nd Cir.1989) (federal prosecution not barred by prior foreign prosecution). As it relates to Indian tribes, however, application of the dual sovereignty doctrine has been less straightforward, in part because the prosecutorial power of the tribes has changed over time. While Indian tribes may prosecute their own members, *see United States v. Wheeler*, 435 U.S. 313, 322, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978), they may not prosecute "non-Indians," *see Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978). And in *Duro v. Reina*, 495 U.S. 676, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990), the Supreme Court held that the tribes were not permitted to prosecute "non-member Indians" either.

The *Means* case, *supra*, reviewed the historical development of the applicable law. It noted that prior to *Duro*,

[I]t was not clear whether Indian tribal courts could exercise criminal jurisdiction over all Indians, or just over the members of their own tribes. On the other hand, it has been clear since the late 1970s both that Indian tribes cannot exercise criminal jurisdiction at all over "non-Indians" and that tribes can exercise criminal jurisdiction over their own members. In *Duro*, the Supreme Court

explicitly resolved the remaining issue of "non-member Indians". . . .

. . . . .

[In so doing,] the Court faced the question of whether the tribes had also "retained" the inherent authority to exercise criminal jurisdiction over non-member Indians, or whether that power . . . was "inconsistent with their status." The Court reasoned that its prior holdings made clear that non-member Indians were more like non-Indians in relation to tribes other than their own-that is, both were "external" to the tribe that wished to exert criminal jurisdiction over them. Therefore, it was clear that the "retained inherent authority" of the tribe to exercise power over its internal affairs did not allow the tribe to exert criminal jurisdiction over any non-members, whether Indian or not.

154 F.3d at 944, 945 (citations omitted).

Congress reacted to the *Duro* decision by passing the 1990 amendments to the ICRA. These amendments clearly recognized the tribes' inherent power of criminal jurisdiction over non-member Indians. The legislative record unmistakably characterizes the legislative action as a recognition and affirmance of the tribes' historical sovereign powers over non-member Indians. *See United States v. Weaselhead*, 36 F.Supp.2d 908, 914–15 (D.Neb. 1997), *aff'd by an equally divided court*, 165 F.3d 1209 (8th Cir.1999); *see also Means*, 154 F.3d at 943–44, 946–47.[1]

■ In the present case, the government argues that the Tribe proceeded

---

1. Judge Reinhardt's concurring opinion in *Means* provides an extensive discussion of the legislative history of the 1990 amendments and the clear congressional intent "that § 1301 serve as a confirmation of the tribes' pre-existing jurisdiction, and not as a delegation of such jurisdiction." 154 F.3d at 951. Judge Reinhardt cites the following statements, among others, as representative excerpts from the legislative record: "[the] legislation clarifies and reaffirms the inherent authority of tribal governments to exercise criminal jurisdiction over all Indians on their reservations," H.R. Conf. Rep. No. 261, 102nd Cong., 2nd Sess. 3 (1991) *reprinted in* 1991 U.S.C.C.A.N. 379, and "[the amendments seek] to assure Indian tribes of their jurisdiction over misdemeanor crimes committed on their lands by Indians who are not members of their tribe. The Committee is clarifying an inherent right which tribal governments have always held and was never questioned," see 137 Cong. Rec. H2988–02 (report on H.R. 972). *See Means*, 154 F.3d at 950–51 (Reinhardt, J., concurring).

under its inherent authority when it prosecuted Enas. We agree with the government's assertion.

 Although *Duro* temporarily restricted the reach of tribal power, Congress rejected that opinion through federal action. It is well established that Congress may deal with the special problems facing Indians using its authority under the Indian Commerce Clause. *See Morton v. Mancari,* 417 U.S. 535, 551–52, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). Congress may alter the scope of tribal power as set forth by the Supreme Court if the Court determines that scope as a matter of federal common law; it can do so because Congress has legislative authority over federal common law. *See Milwaukee v. Illinois and Michigan,* 451 U.S. 304, 313–14, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981); *United States v. Weaselhead,* 156 F.3d 818, 825 (8th Cir.1998) (M.Arnold, J., dissenting), *reh'g granted and opinion vacated,* 156 F.3d 818, *on reh'g,* 165 F.3d 1209 (8th Cir.1999) (en banc) *aff'g by an equally divided court* 36 F.Supp.2d 908 (D.Neb. 1997). Additionally, we note that Congress may *recognize* a power without being the *source* of that power. *See Wheeler,* 435 U.S. at 328, 98 S.Ct. 1079 (1978).

 In the panel opinion of *Weaselhead,* Judge Morris Sheppard Arnold of the United States Court of Appeals for the Eighth Circuit got it exactly right when he commented in his dissent on the power of Congress to recognize and affirm Indian sovereignty:

> Chief Justice Marshall, in *Cherokee Nation v. Georgia,* 30 U.S. (5 Pet.) 1, 16–19, 8 L.Ed. 25 (1831), suggested that the question of whether an Indian tribe was a state was to be determined by reference to the uniform custom of nations and, more important, by reference to the history of our country's dealings with various Indian tribes. Indian tribes, he wrote, "have been uniformly treated as a state, from the settlement of our country.... The acts of our government plainly recognise [sic] the

Cherokee nation as a state, and the courts are bound by those acts." *Id.* at 16. Chief Justice Marshall made no intimation that the Constitution had anything to say on the question of whether Indian tribes are states. The Constitution is simply silent on the matter and on the related question of inherent Indian sovereignty. These are matters that are to be decided by reference to governmental custom and practice and to the general principles of the *jus gentium.*

> In other words, the question of what powers Indian tribes inherently possess ... has always been a matter of federal common law. As a recent law review article noted, "*Oliphant* and *Duro* were not constitutional decisions; they were founded instead on federal common law." *See* L. Scott Gould, *The Consent Paradigm: Tribal Sovereignty at the Millennium,* 96 Colum. L.Rev. 809, 853 (1996). That being the case, Congress has the power to expand and contract the inherent sovereignty that Indian tribes possess because it has legislative authority over federal common law.

*Weaselhead,* 156 F.3d at 825 (panel opinion) (M.Arnold, J., dissenting).

Although *Duro* held that the prosecution of non-member Indians was beyond the jurisdiction of tribal courts, Congress, acting under its authority over federal common law, has declared that Indian tribes may prosecute non-member Indians and that such prosecutions flow from the tribes' inherent sovereign powers. *See* 25 U.S.C. § 1301(2).

Thus, in this case, the tribal court proceeded under its inherent sovereignty when it exercised jurisdiction over Enas. As a result, under the "dual sovereignty doctrine," the Double Jeopardy Clause does not bar a subsequent prosecution of Enas by the federal government.

We briefly comment on the district court's reliance on the language in *Means*

as the basis for finding double jeopardy. The district court stated in its order:

> Having reviewed the *Means* case, the Court concludes that it must find that the amendment was "an affirmative delegation of jurisdiction" by Congress to the tribes. *Id.* at 946 [*Means*]. Accordingly, a tribe acting pursuant to a delegation of jurisdiction exercises a federal power and becomes the same sovereign as the United States with respect to non-member Indians for double jeopardy purposes.

E.R. at 11.

We believe that the district court interpreted the language of the *Means* case too broadly. The statement in *Means* that the 1990 congressional amendments serve as an "affirmative delegation of jurisdiction" is tempered by footnote 7 in the opinion, which reads in part:

> It is quite likely that Congress chose the "recognized and affirmed" language in an effort to avoid potential Constitutional problems that might be implicated by an affirmative delegation of jurisdiction, even when only applied prospectively. *Duro* makes it clear that non-Indians and non-member Indians are similarly situated in regard to tribal courts' exercise of criminal jurisdiction....

*Means*, 154 F.3d at 946 n. 7.

The language in *Means* treating the congressional language as an "affirmative delegation of jurisdiction" was not necessary to the court's decision. Whether the court considered the statutory language to be a delegation of federal power or an affirmation of existing power, the congressional enactment could not operate retroactively in any event to prejudice the defendant in that case without violating the Ex Post Facto Clause of the Constitution. *See Means*, 154 F.3d at 948; *see also id.* at 950–51 (Reinhardt, J., concurring).

We are obligated to apply the clear meaning of the statutory language, as well as the supporting history of that enactment. To the extent that the language from *Means* quoted above is contrary to the clear meaning and statutory history, that language was unnecessary to the result in the case and constitutes dictum only, which is not binding in the present litigation.

## III.   CONCLUSION

We conclude that the 1990 amendments to ICRA did not amount to a delegation of authority from Congress to the tribes, but instead constituted a recognition of the inherent sovereign power of the tribes to prosecute non-member Indians. Because the 1990 amendments recognize the sovereign power of Indian tribes to prosecute non-member Indians who commit crimes on tribal lands, the dual sovereignty doctrine applies in this case. The Double Jeopardy Clause therefore does not bar the successive prosecution of Michael Enas by the United States government.

Accordingly, we REVERSE and REMAND for trial.