**ROBESON DEFENSE COMMITTEE, et al., Carnell Locklear, Mary Sanderson, Thelma Clark, Eleanor Jacobs, Betty McKellar, Eddie Hatcher, and Timothy Jacobs, Plaintiffs,**

v.

**Joe Freeman BRITT, Richard Townsend, Lee Edward Sampson, Hubert Stone, Lacy H. Thornburg, Robert Morgan, James Bowman, James G. Martin, SBI Doe I, SBI Doe II, SBI Doe III, Deputy Sheriff Doe I, Deputy Sheriff Doe II, Deputy Sheriff Doe III, Deputy Sheriff Doe IV, Deputy Sheriff Doe V, District Attorney Doe I, District Attorney Doe II, District Attorney Doe III, Robeson County, et al., Defendants.**

No. 89–06–CIV–3–H.

United States District Court,
E.D. North Carolina,
Fayetteville Division.

Sept. 29, 1989.

Lewis Pitts, Christic Institute South, Chapel Hill, N.C., William M. Kunstler, New York City, Barry Nakell, Chapel Hill, N.C., for plaintiffs.

Joan H. Byers, Sp. Deputy Atty. Gen., James J. Coman, Sr. Deputy Atty. Gen., David Roy Blackwell, Sp. Deputy Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., Steven C. Lawrence, Anderson, Broadfoot, Johnson & Pittman, Fayetteville, N.C., for defendants.

## ORDER

MALCOLM J. HOWARD, District Judge.

This matter is before the court on the parties' cross-motions for sanctions pursuant to Fed.R.Civ.P. 11. Plaintiffs filed this civil rights action under 42 U.S.C. § 1983, alleging a deprivation of constitutional rights. Plaintiffs include the Robeson Defense Committee, an unincorporated association, several Native–American and African–American residents of Robeson County, Eddie Hatcher, and Timothy Jacobs. Defendants include Governor Jim Martin, former District Attorney Joe Freeman Britt, District Attorney Richard Townsend, Attorney General Lacy Thornburg, Director of the State Bureau of Investigation Robert Morgan, state employee Lee Edward Sampson, and various John Doe State Bureau of Investigation agents and assistant district attorneys.

## STATEMENT OF FACTS

This civil rights action arose out of the criminal proceedings that followed the armed takeover of the Robesonian newspaper by plaintiffs Hatcher and Jacobs. Hatcher and Jacobs were acquitted by a federal jury on federal charges stemming from the takeover. Their defense was that the takeover was necessary to gain protection and to have a forum to express their views that the local sheriff and district attorney offices were corrupt.

Hatcher and Jacobs were subsequently indicted by the State on State charges arising out of the Robesonian takeover. This State prosecution and the circumstances surrounding it allegedly formed the basis for plaintiffs' § 1983 complaint. Plaintiffs asked for damages and an injunction of the State criminal proceedings.

Plaintiffs filed the complaint on January 31, 1989 over the signature of Barry Nakell and filed an amended complaint on March 16, 1989 over the signature of Nakell, William Kunstler, and Lewis Pitts. Plaintiffs alleged, among other things, that Governor Martin, through his agents, negotiated an agreement with Hatcher and Jacobs that they would not be prosecuted by Robeson County law enforcement authorities. Plaintiffs allege that Governor Martin agreed with defendants Britt, Thornburg and the U.S. Attorney's Office that Hatcher and Jacobs would be prosecuted by federal, not state, authorities. It is alleged that the State prosecution violates this agreement.

The complaint alleges that following the federal acquittal, the plaintiffs engaged in First Amendment activity in Robeson County in an effort to encourage political change. Plaintiffs allege that various defendants conspired to harass and intimidate plaintiffs to prevent them from engaging in these First Amendment activities.

Plaintiffs allege that various defendants interfered with Jacobs' Sixth Amendment rights by advising his family and friends that Jacobs should fire his New York counsel and retain local counsel and that Jacobs should voluntarily return to North Carolina to testify against Hatcher. Plaintiffs allege that these communications interfered with Jacobs' relationship with his counsel and his joint defense with Hatcher. Plaintiffs also allege that defendants attempted to coerce Jacobs into testifying in violation of Hatcher's Fifth Amendment rights. Plaintiffs assert finally that the subsequent State prosecution violated the Double Jeopardy Clause.

After defendants answered and filed a motion to dismiss, plaintiffs requested a voluntary dismissal with prejudice under Fed.R.Civ.P. 41(a)(2), which this court granted on May 2, 1989. Defendants subsequently moved for Rule 11 sanctions based on the complaint and amended complaint; plaintiffs moved for Rule 11 sanctions based on defendants' Rule 11 motion. Plaintiffs also asked for discovery and an evidentiary hearing. The court, having been inundated with written materials [1] and having heard oral arguments, is now pre-

---

1. On the Rule 11 motion alone, the defendants have written 97 pages of memoranda, the plaintiffs 90. Each side has submitted several hundred dred pages of appendices. The previous filings in the case are of similar length.

pared to rule on these motions and requests.

## RULE 11

Rule 11 of the Federal Rules of Civil Procedure states in pertinent part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion or other paper is signed in violation of this rule, the court, ... shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

■ Rule 11 has three prongs, the violation of any one of which justifies sanctions. First, any pleading signed by an attorney must not be interposed for any improper purpose. *See NCNB Nat. Bank of North Carolina v. Tiller,* 814 F.2d 931 (4th Cir. 1987). Second, a pleading must be warranted by existing law or a good faith argument for modification of existing law. *See Cabell v. Petty,* 810 F.2d 463 (4th Cir. 1987). Third, Rule 11 requires an attorney to make reasonable inquiry to determine that the pleading is well grounded in fact. *See Fahrenz v. Meadow Farm Partnership,* 850 F.2d 207 (4th Cir.1988). The court discusses in greater detail the development and purposes of Rule 11 in *Barnett D. Plotkin, et al. v. Association of Eye Care Centers, Inc., et al.,* No. 88–87–CIV–

5–H, 1989 WL 225766 (E.D.N.C. September 29, 1989), in which this court today has denied a request for sanctions. Therefore, the court will not again address the development and purpose of Rule 11 in this order.

■ As a preliminary matter, plaintiffs argue that the dismissal of this action pursuant to Rule 41(a)(2) precludes the defendants from bringing the present Rule 11 motion. Plaintiffs argue that defendants did not reserve the right to file such a motion and that the court's dismissal contained no such reservation. This argument is without merit.

Nothing in the Rule states that a party loses the right to Rule 11 sanctions if he fails to reserve such a right as a condition to a Rule 41(a)(2) dismissal. The terms and conditions that may be imposed upon a voluntary dismissal are for the protection of the defendant. Wright & Miller, Federal Practice and Procedure: Civil § 2366 (1971 and Supp.1988). A voluntary dismissal without prejudice allows a plaintiff to bring a later identical action. Therefore, it is the defendant's interests which are protected by conditions imposed in a Rule 41(a)(2) dismissal. *LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601, 603 (5th Cir.1976).

In this case, the court dismissed the plaintiffs' suit with prejudice. Such a dismissal constitutes a final judgment and bars the plaintiffs from bringing a second suit on the same cause of action. The need to protect the defendants' interest due to the possibility of a second suit is not present in this case. Nothing in Rule 41(a)(2) bars this Rule 11 motion. *Harris v. Marsh,* 123 F.R.D. 204, 228–29 (E.D.N.C. 1988), citing *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1076–79 (7th Cir.1987), *cert. dismissed,* 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988).[2]

## PLAINTIFFS BROUGHT THIS CIVIL ACTION FOR AN IMPROPER PURPOSE

■ The court addresses this prong first because it is greatly concerned with the

---

**2.** Plaintiffs next argue that the defendants' Rule 11 motion is not timely in that it was filed two months after the dismissal. This argument is without merit. *Hicks v. Southern Maryland Health Systems Agency,* 805 F.2d 1165 (4th Cir. 1987) (in absence of local rule, the only time limitation arises out of equitable considerations that a district judge may weigh in his discretion).

motives of plaintiffs' attorneys and the manner in which they have conducted themselves. The activities of plaintiffs and their counsel, as well as the papers filed with the court, indicate that plaintiffs' attorneys initiated the § 1983 action not to vindicate constitutional rights, but more probably to gain publicity and to influence the State prosecution then underway against Hatcher and Jacobs.[3]

This action was filed on January 31, 1989, which is significant in that it was the day before the one-year anniversary of the Robesonian takeover. Moreover, counsel did not merely file the complaint, but followed it with a press conference on the Robeson County Courthouse steps. The voluntary dismissal was conducted with considerably less fanfare.[4]

Plaintiffs assert that they filed the civil rights action in response to harassment and intimidation directed towards them from October 14, 1988 to January 31, 1989. The complaint sought injunctive relief ordering termination of the harassment, termination of the prosecution, and termination of the State's communication with Jacobs and his family concerning his legal representation. However, plaintiffs waited through October, November, December, and January to file this complaint. This timing indicates that the motivation behind the complaint was not the vindication of constitutional rights. Mr. Pitts stated to the press after the dismissal:

> The relief we could have won would be, I think, very limited compared to the amount of resources that would have had to be plowed into it.... And we think there would be better ways of raising the issues of injustice and drug trafficking and deliberate indifference by public officials than by the suit.

Defendants' Memorandum, Exhibit 3 (undated Raleigh News and Observer article).

The question arises as to why plaintiffs' filed this suit. First, plaintiffs faced Jacobs' extradition hearings in New York the following month. The court finds that the civil action was instituted as leverage in these extradition proceedings. Neal P. Rose, a New York District Attorney, has filed an affidavit with the court stating that Mr. Pitts offered to dismiss this civil action as part of the plea bargain and that Mr. Pitts admitted that the civil suit had been commenced as leverage and that it had no basis in fact. Defendants' Memorandum, Exhibit 2. In response, Mr. Pitts contends that he was concerned only with the negative consequences of the civil rights action as it related to the pending criminal prosecutions. Plaintiffs' Memorandum at 40. This contention is difficult to accept in light of the intentional publicity that plaintiffs gave this case. It would appear that had Mr. Pitts truly been concerned with the negative consequences of the § 1983 case, he would not have intentionally tweaked the state's nose in a press conference.

Second, the day the complaint was filed, Mr. Nakell wrote a letter to State Court Judge Anthony M. Brannon, who likely would have been the judge to try Hatcher and Jacobs, and enclosed a copy of the federal civil complaint. Defendants' Memorandum in Support of Motion for a Protective Order, Exhibit D. This somewhat astonishing conduct indicates that the motive behind the filing of the civil rights action was to influence Judge Brannon and other state and county officials.

Third, plaintiffs filed this action to obtain discovery otherwise unobtainable under North Carolina Criminal Procedure. By naming Bowman and Britt as defendants, plaintiffs could obtain discovery of the State's criminal investigatory files other-

---

**3.** Plaintiffs' counsel asserts that asking for an injunction is a proper way to "interfere" with a pending state prosecution. The court agrees; however, the court finds improper purpose from conduct other than the mere filing of a request for injunctive relief.

**4.** The court is aware that conducting a press conference is a First Amendment activity. The court is not imposing sanctions *because* of this press conference. The court does not mean to indicate that it will impose Rule 11 sanctions on attorneys who speak to the press. However, the court believes that the press conference and what was said therein, considered in light of the surrounding circumstances, is evidence of improper purpose.

wise unavailable to them under North Carolina procedure. Shortly after filing the complaint, plaintiffs sought leave of court to depose Bowman, even though they had not yet served all of the defendants. Plaintiffs sought expedited discovery, not because it was necessary to pursue the civil action, but because normal discovery would not have helped them in Jacobs' upcoming extradition hearing in New York. Furthermore, at the press conference announcing the filing of the suit, Mr. Pitts stated that "now we have the subpoena power ...," indicating that the action was filed to gain access to State Bureau of Investigation files, rather than to vindicate constitutional rights. After the extradition hearing, the suit was dropped.[5]

The most damning evidence of all, however, is the sudden and inexplicable voluntary dismissal *with* prejudice on May 2, 1989. Significantly, this dismissal occurred after Jacobs lost his extradition fight and returned to North Carolina and before any significant discovery or other event which would have given notice to the plaintiffs that their claims were not valid. Indeed, with Jacobs now back in North Carolina, he would have once again been subject to the unconstitutional conduct of the various defendants.

Plaintiffs state as a reason for the dismissal that the Sixth Amendment issues had become moot since Jacobs had received an acceptable plea bargain, and that the First Amendment objections were no longer important because the interference had stopped. Neither reason is credible if the true intent of plaintiffs was to vindicate constitutional rights. Plaintiffs alleged widespread First Amendment violations impacting on a number of persons. The mere fact that the conduct stopped does not moot those claims. Nor is it clear that Jacobs' Sixth Amendment claims are moot just because he retained other counsel. *United States v. Smith*, 653 F.2d 126 (4th Cir.1981); *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932)

(constitutional right to counsel includes right to counsel of one's choice). Jacobs still had a claim that the defendants intentionally interfered with his counsel of choice, and Hatcher and Jacobs still had a claim that their joint defense had been impaired.

Plaintiffs have alleged a widespread conspiracy involving high-level state and county officials. It is absurd to think that these allegations were suddenly unimportant by May 2, 1989. Furthermore, the basis of the complaint is that the State promised Hatcher and Jacobs that it would not prosecute them. If this were true, the alleged breach of this agreement still exists as to Hatcher and even as to Jacobs following his guilty plea.

Plaintiffs alleged that the prosecution of Hatcher and Jacobs was barred by the Double Jeopardy Clause. Those claims, if they were valid to begin with, were every bit as valid when plaintiffs dismissed the case. None of the damage claims and few of the requests for equitable relief were affected by any event occurring between the date of filing and the date of dismissal. Hatcher and Jacobs remained subject to the same purportedly unconstitutional prosecutions, and counsel's assertion that the alleged oppression of civil liberties in Robeson County had suddenly ceased is not credible.

Plaintiffs contend that a financial decision was made that the damage claims did not warrant the extensive expenditure of time and professional resources. Such a decision should have been made before suit was filed. After the dismissal, Mr. Pitts was quoted as saying that the case was dismissed after the Attorney General's Office "made it very clear that ... everything was going to be arm's length warfare." Defendants' Memorandum, Exhibit 3 (undated Raleigh News and Observer article). The court concludes that plaintiffs brought the suit for publicity purposes and dropped

---

5. Furthermore, in plaintiffs' cross-motion for sanctions they again ask for discovery. They have failed to show why discovery would be necessary to litigate these Rule 11 motions.

Discovery would, however, be helpful to the criminal defense of Mr. Hatcher who now faces 14 charges of second degree kidnapping.

it when major opposition resulted. This in itself violates Rule 11.

Counsel contended at the hearing that the suit was dismissed because the State had successfully split Hatcher and Jacobs. However, this fact makes none of their claims less cognizable, and, more importantly, there is evidence that Hatcher and Jacobs had parted ways before even the original complaint was filed. Plaintiffs' Memorandum, Exhibit 56.

This court is forced to conclude that plaintiffs' counsel never intended to litigate this § 1983 action and that counsel filed it for publicity, to embarrass state and county officials, to use as leverage in criminal proceedings, to obtain discovery for use in criminal proceedings, and to intimidate those involved in the prosecution of Hatcher and Jacobs. All of these purposes are improper and warrant sanctions under Rule 11. Even if the complaint had a proper legal and factual basis, sanctions would be appropriate since this court finds that the purpose of the lawsuit was improper. *See e.g., Brown v. Federation of State Medical Bds.*, 830 F.2d 1429 (7th Cir.1987).

## COUNSEL FAILED TO MAKE A REASONABLE INQUIRY TO DETERMINE IF THE COMPLAINT WAS WELL GROUNDED IN FACT AND WARRANTED BY EXISTING LAW

■ Plaintiffs filed a 35 page complaint and a 30 page amended complaint, much of which consisted of editorialization and a history lesson which even included a discussion of the use of segregated restrooms and water fountains in Robeson County since the time of Reconstruction. A complaint in federal court is supposed to be a "short and plain statement showing that the pleader is entitled to relief." Fed.R. Civ.P. 8(a)(2). The complaint is neither short nor plain and much of it, if not all of it, fails to show that any plaintiff is entitled to any relief. The complaint is riddled with claims that justify Rule 11 sanctions.

■ First, plaintiffs argue that the subsequent prosecution violates the Double Jeopardy Clause. First year law students learn that the Double Jeopardy Clause does not prohibit subsequent prosecutions by different sovereigns. This concept was reaffirmed by the United States Supreme Court just four years ago in *Heath v. Alabama*, 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985). *Heath* is the latest in an unbroken chain of decisions ranging back at least as far as *United States v. Lanza*, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922). If plaintiffs' contention qualifies as a good faith argument for reversal of existing law, then precedent means nothing, and we will have to relitigate forever settled concepts of law. Plaintiffs also contend that the "tool of the same authorities" exception justifies their double jeopardy claim. *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). This exception, however, does not bar cooperation between sovereigns; plaintiffs must establish that State officials had little or no independent volition in the State proceedings. *United States v. Liddy*, 542 F.2d 76, 79 (D.C.Cir.1976). Plaintiffs allege, however, that the State officials instituted and controlled the subsequent proceedings; therefore, plaintiffs knew they had no basis for making a double jeopardy allegation.[6] Mr. Pitts even admitted to the press after filing the complaint that no double jeopardy problem existed. Pattishal, *Justice in Robeson County: Carrboro Lawyers, Southern Racism, Bizarre Politics, and Death in the Cocaine Wilds*, Robeson County Leader, April 13, 1989.

Second, plaintiffs contend that Hatcher's Fifth Amendment rights were harmed when the state tried to extract incriminating testimony from Jacobs. Amended Complaint, Par. 51. Fifth Amendment protection is personal to the individual whose testimony is being compelled. *Moran v. Burbine*, 475 U.S. 412, 433, 106 S.Ct. 1135, 1147, 89 L.Ed.2d 410, 428 (1986). Any testimony from Jacobs concerning Hatcher does not implicate Hatcher's right against

6. Plaintiffs even alleged that the prosecution violated the state Double Jeopardy Clause,

which cannot be asserted in a § 1983 action.

self-incrimination. This claim has no basis in the law.

Third, plaintiffs requested an injunction of the State criminal proceedings, which is clearly barred by federal abstention doctrine. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Hatcher and Jacobs had ample opportunity to present their federal constitutional claims regarding the validity of the prosecution to the state courts. *Juidice v. Vail*, 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376, 385 (1977). Plaintiffs had no basis for asserting that the state prosecution was brought in bad faith. In the context of *Younger* abstention, bad faith generally means without a reasonable expectation of conviction. *Suggs v. Brannon*, 804 F.2d 274, 278 (4th Cir.1986). Hatcher and Jacobs have never denied taking hostages, so there is simply no basis for believing that the State did not have a reasonable expectation of conviction. Plaintiffs have presented this court with no cases applying a *Younger* exception which even remotely resembles this case; their allegations of bad faith in affidavits submitted to the court are nothing but speculation. Furthermore, plaintiffs have failed to present one fact indicating that the prosecution was initiated to harass the plaintiffs.

Fourth, there are serious standing problems with many of the plaintiffs' claims. The complaint alleges that the prosecution of Hatcher and Jacobs has chilled their First Amendment expression. However, the Supreme Court has held that allegations of mere chill without any objective harm is not grounds for equitable relief. *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–26, 33 L.Ed.2d 154 (1972). Plaintiffs have not presented any facts showing a specific, present objective harm or a threat of specific future harm.

Fifth, plaintiffs misstate numerous facts in an effort to implicate the defendants in a massive and sinister conspiracy. Plaintiffs assert that the district attorney "serves as the criminal prosecution arm of defendant Robeson County and as such makes policy in police investigation and criminal prosecution matters for Robeson County...." Amended Complaint, Par. 9–10. A simple reading of N.C.G.S. 7A–61, *et seq.* indicates that the district attorney is an officer of the State and neither an agent nor an employee of Robeson County. Plaintiffs further allege that defendants Britt, Townsend and Sampson serve as agents or employees of Robeson County. These individuals are State officers and do not work for Robeson County. Plaintiffs also allege that District Attorney Britt refused and failed to discipline, train and supervise Sheriff's deputies. Amended Complaint, Par. 18. North Carolina District Attorneys possess no such power or responsibility.

Plaintiffs' counsel have previously misstated the duties and responsibilities of public officials named in a suit to implicate them in a conspiracy. Mr. Pitts, in *Waller v. Butkovich*, 584 F.Supp. 909, 935 n. 5 (M.D.N.C.1984), was cited for making misrepresentations concerning state law enforcement personnel. It would appear that a similar tactic has been employed in this present matter.

Sixth, one of the major allegations in the complaint is that the Governor, the Attorney General, and the District Attorney entered into an agreement that Hatcher and Jacobs would be prosecuted in federal and not state court. However, an examination of the North Carolina General Statutes reveals that neither the Governor nor the Attorney General possesses the power to bind the State not to prosecute.

As early as February 26, 1988, plaintiffs' counsel had access to the transcript of the negotiations leading to the hostage release agreement as well as a copy of the written agreement. Nothing in the agreement between Hatcher and Kirk, or in any of the negotiations, suggests an agreement that Hatcher and Jacobs would not face North Carolina charges, and none of the negotiators had the authority to so agree.

Seventh, plaintiffs have acknowledged to the court that when they filed the com-

plaint asking for a temporary restraining order, they did not possess facts sufficient to establish the necessity of such an order. In Plaintiffs' Memorandum and Opposition to Defendants' Motion for a Protective Order, plaintiffs wrote:

> Plaintiffs anticipate that as a result of [deposing defendant Bowman] they will be in a position to apply to this court for temporary injunctive relief and make the showing required by Rule 65(b) of the Federal Rules of Civil Procedure. Plaintiffs should be permitted to pursue that standard course of action.

It is not a standard course of action to file a complaint and then conduct discovery in the "anticipation" that the complaint will prove warranted. In fact, such a course of conduct merits Rule 11 sanctions.

Finally, the complaint is filled with serious allegations of malfeasance of duty and criminal conduct on the part of high ranking state and local officials. Many of these allegations have nothing to do with this case or these plaintiffs and many are factually unsubstantiated.

For example, plaintiffs allege that a black inmate recently died while in Sheriff Stone's custody. Amended Complaint, Par. 27. The inmate's estate and family are not parties to this action and none of the plaintiffs were damaged by the inmate's death. Plaintiffs also allege that Sheriff Stone is engaged in illegal drug trafficking, but allege no injury special to them and have failed to produce one hard fact to justify this allegation.

Plaintiffs allege that blacks and Indians in Robeson County have been subject to abusive behavior, but none of these plaintiffs allege that they have been assaulted or injured. Amended Complaint, Par. 25. Plaintiffs allege that Robeson County is beleaguered by poverty, illiteracy, and violence, none of which has anything to do

with these plaintiffs stating a claim against these defendants. Amended Complaint, Par. 26.

Plaintiffs allege that Britt, Townsend, Thornburg and Morgan conspired to orchestrate the appointment of Townsend as District Attorney and to use State Bureau of Investigation agents as political police to discredit the only Republican candidate. Amended Complaint, Par. 44. First, counsel has failed to demonstrate that they had any factual basis for this allegation. Second, it has nothing to do with this case; the Republican candidate is not a party and none of the plaintiffs allege any injury from this incident.

All of this gratuitous commentary on the life and times in Robeson County, even if true, does not support any of the claims for relief; this court can conclude only that counsel included them for publicity and to intimidate the defendants and others involved in the Hatcher and Jacobs prosecution.

Counsel has submitted a stack of affidavits and exhibits purporting to explain why they believed they had a factual basis for filing the suit. The court has reviewed this material and is not impressed. Most of the affidavits, particularly those of counsel, are self-serving and largely based on hearsay and speculation. Counsel may subjectively believe these allegations to be true (and some of them may even be true), but Rule 11 applies an objective test. Counsel simply did not have a factual basis which would lead a reasonable attorney to believe that this civil action was justified.

■ In summary, the court finds that the entire complaint is tainted by improper purpose, and that counsel failed to conduct a reasonable inquiry into the factual and legal allegations they were making.[7] Sanctions are imposed not merely because the

---

7. Mr. Kunstler states in an affidavit to the court that he had no personal knowledge of facts justifying the complaint and that he relied exclusively on Mr. Nakell. Plaintiff's Memorandum, Exhibit 3. In light of the serious allega-

tions in the complaint, Mr. Kunstler's total reliance on other counsel is itself a violation of Rule 11. *Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1128 (5th Cir.1987).

legal and factual assertions in the complaint were erroneous; they are imposed because counsel would have discovered they were erroneous upon minimal research and investigation. A reasonable attorney would not have believed that this complaint was well grounded in fact or warranted by existing law.

## PLAINTIFFS' CROSS–MOTION FOR RULE 11 SANCTIONS

■ As noted above, plaintiffs' counsel has filed a Rule 11 motion in response to defendants' Rule 11 motion, in which plaintiffs' counsel ask for discovery and an evidentiary hearing. Discovery is not permitted on Rule 11 motions absent extraordinary circumstances. *See* Adv. Com. Note to Fed.R.Civ.P. 11. No extraordinary circumstances exist in this case justifying discovery or an evidentiary hearing. For the reasons stated previously in this order, defendants' Rule 11 motion was properly filed, and the Rule 11 motion of plaintiffs' counsel must be and is hereby denied.

## SANCTIONS ON PLAINTIFFS' COUNSEL

■ Needless to say, the imposition of sanctions under Rule 11 is not done lightly, or without great reflection on the part of the court. With this in mind, the court notes that throughout the history of this country, there have been numerous attorneys specializing in the area of civil rights. These attorneys have played an invaluable role in instigating and promoting numerous societal goals, many of which we now take for granted. Certainly the respondent Mr. Kunstler has been a leading civil rights attorney for many years. Nonetheless, Rule 11 applies to *all* attorneys, civil rights lawyers not excepted. *Oliveri v. Thompson,* 803 F.2d 1265, 1280–81 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). The court is certain that today's ruling in no way will deter civil rights lawyers from filing legitimate complaints in the future to protect the civil

rights of others and the Constitution that we all hold so dear.

This court has ruled on one issue and one issue only: the pending Rule 11 motions. The parties have attempted to lead this court into a broader inquiry into alleged corruption in Robeson County in general, and in Robeson County and North Carolina law enforcement in particular. Whether these allegations are true or false is not the issue currently before the court. The sole issue is whether the plaintiffs' counsel conducted a reasonable inquiry to determine if the complaint filed on January 31, 1989 and the subsequent amended complaint were well grounded in fact and law and were not filed for an improper purpose. Even if it were later determined that the allegations raised in those complaints were true, this court finds that the conduct of plaintiffs' counsel at the time of the filing of the original and the amended complaint is nonetheless sanctionable.

Having ruled that plaintiffs' counsel have violated Rule 11, sanctions are *mandatory. Cabell v. Petty,* 810 F.2d 463, 466 (4th Cir.1987). The first purpose of sanctions under Rule 11 is to compensate the offended parties for all reasonable expenses incurred by reason of the Rule 11 violation. Accordingly this court hereby imposes liability on William M. Kunstler, Barry Nakell, and Lewis Pitts, jointly and severally, in the amount of NINETY–TWO THOUSAND EIGHT HUNDRED THIRTY–FOUR DOLLARS AND TWENTY–EIGHT CENTS ($92,834.28), representing legal fees and expenses incurred by the State defendants represented by the Office of the Attorney General of North Carolina in the amount of EIGHTY–THREE THOUSAND SIX HUNDRED THIRTEEN DOLLARS AND FIFTY–EIGHT CENTS ($83,-613.58) and Robeson County defendants represented by Steven C. Lawrence of the law firm of Anderson, Broadfoot, Johnson & Pittman in the total amount of NINE THOUSAND TWO HUNDRED TWENTY DOLLARS AND SEVENTY CENTS ($9,220.70). This court has reviewed the affidavits filed by the attorneys of the

North Carolina Attorney General's Office and finds the computation and final statement of costs and expenses incurred by the State in the defense of this matter to be reasonable and accurate, and also finds the affidavit of Steven Lawrence, Esquire, on behalf of the County defendants to be reasonable and accurate. Accordingly, this court has based its compensatory sanctions on these certified costs and expenses. The court further orders that these amounts be remitted to the Clerk of the United States District Court for the Eastern District of North Carolina with interest at the rate of 8.19% per annum from the date of the filing of this order. When these sums are received by the Clerk of this court, he shall in turn remit to the State of North Carolina the amount of EIGHTY–THREE THOUSAND SIX HUNDRED THIRTEEN DOLLARS AND FIFTY–EIGHT CENTS ($83,613.58) plus accrued interest and shall remit to Robeson County the amount of NINE THOUSAND TWO HUNDRED TWENTY DOLLARS AND SEVENTY CENTS ($9,220.70) plus accrued interest.

■ Compensation to the offended parties is not the only purpose for sanctions under Rule 11, however. In addition, the court may award sanctions to serve as a deterrence to others and as punishment to the particular attorneys involved. The court hereby imposes these punitive sanctions because of the egregious nature of the violations of Rule 11 in the present case. This is not a typical Rule 11 case in which an attorney may have been a little careless or sloppy in filing an improper complaint. Plaintiffs' counsel alleged that high-ranking public officials of both Robeson County and the State of North Carolina *willfully* (Amended Complaint, Par. 58) violated the constitutional rights of a number of individuals, and then plaintiffs' counsel took pains to publicize these allegations through the media. Accordingly, this court imposes additional sanctions on William M. Kunstler, Barry Nakell, and Lewis Pitts *each* in the amount of TEN THOUSAND DOLLARS ($10,000) which shall not bear interest. These sanctions of TEN THOUSAND DOLLARS ($10,000) each shall be remitted to the Clerk of the United States District Court for the Eastern District of North Carolina for credit and transmission to the Treasury of the United States.

This court further orders that until the aforementioned amounts are paid, with interest on those sums ordered to be paid with interest, William M. Kunstler, Barry Nakell and Lewis Pitts are hereby prohibited from appearing in or practicing before the United States District Court for the Eastern District of North Carolina.

Accordingly, it is hereby ORDERED that the motion of the defendants (State and County) for sanctions against William M. Kunstler, Barry Nakell, and Lewis Pitts is GRANTED in the amounts and forms specified above. It is further ORDERED that the plaintiffs' cross-motion for sanctions is DENIED.