## UNITED STATES ex rel. FLANNERY v. COMMANDING GENERAL, SECOND SERVICE COMMAND et al.

### Civ. 735.

District Court, S. D. New York.

Feb. 21, 1946.

Quittner, Weis & Wilner, of New York City (Joseph Quittner and Seymour J. Wilner, both of New York City, of counsel), for relator.

John F. X. McGohey, U. S. Atty., Southern District of New York, of New York City (John F. Ryan, Asst. U. S. Atty., of New York City, of counsel), for respondents.

CLANCY, District Judge.

The relator was employed in the United States Secret Service and obtained military leave of absence therefrom in 1943 when he was inducted into the Army. A.

rule of the United States Secret Service forbids any of its officers or employees to have any interest whatever in the business of the commercial sale and distribution of distilled spirits and relator at all times knew of this rule. In July, 1945, being then a sergeant, relator together with another soldier applied to New York State Alcoholic Beverage Control Board for a retail liquor store license, swearing in his application that upon his discharge from the Army he "will resign from said position"; i. e., United States Secret Service, and devote himself to the retail liquor business. On September 1, 1945, relator requested discharge from the Army on the basis of his membership in the Secret Service and his then professed desire to return thereto under an Army regulation authorizing discharge of a soldier in his situation as one important to the national health, safety or interest. Relator was discharged in accordance with that regulation on September 24, 1945. Such a discharge gave the relator no right to a separation allowance. The order which sent relator to the separation center to receive his discharge was not of relator's making. Whether he saw it is not shown—that he could not have understood it appears affirmatively. It bore an erroneous statement that it was issued under the authority of another paragraph of the Army Regulations which was identified by a code or alphabetical reference. At the separation center he was there given a work sheet stating his army experience and the return indicates that he was required to and did fill it out. He was paid a separation allowance then or later. He returned to the Secret Service and obtained a three months' furlough on a plea of family need which was apparently found sufficient by his superiors. On January 28th he was directed where and when to report for duty by his superiors in the Secret Service. On January 29, 1946 he was detained by the army and arraigned before a court-martial on the charge that the Government had been defrauded of his separation allowance because that payment accompanied a discharge obtained by him in fraud in that the application therefor in September professed his intention to return to the Secret Service whereas he had no intention

to do so. There is another charge of an infraction of Article 96, 10 U.S.C.A. § 1568, based on the same facts which respondent admits is insufficient to warrant relator's detention. Relator says that the apparent deficiencies of the charge in fact and in law are such that he must be released but the only question before us is the army's jurisdiction. Matter of the Application of General Tomoyuki Yamashita, 327 U.S. 1, 66 S.Ct. 340.

An individual's military status is established by his contract of enlistment (United States v. Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636) and of its nature is coterminous with that contract. Relator's contract was terminated by his discharge which apparently was unconditioned. When the contract of enlistment is terminated by performance and discharge the quondam soldier has civilian status and no further contract relationship with the army. Ex parte Wilson, D.C., 33 F.2d 214. He has therefore no relationship to the army unless it be established by some law. Respondent appeals to a subparagraph of § 10 of Chapter 4 of a Manual for Courts-Martial, reading: "Where a soldier obtains his discharge by fraud, the discharge may be canceled and the soldier arrested and returned to military control. He may also be required to serve out his enlistment and may be tried for his fraud." The manual was approved in 1927 by an Executive Order of President Coolidge wherein the President stated he was acting by virtue of the powers vested in him as President and pursuant to Chapter 2 of the Act of June 4, 1920, 41 Stat. 759. The only enabling provision of that statute is Article 38, 10 U.S.C.A. § 1509. This article authorizes the President not to declare substantive law but only to prescribe rules of procedure in cases before courts-martial and forbids any prescription "Contrary to or inconsistent with these articles." The only provision in the articles themselves for post-service arraignment of army offenders is in Article 94, 10 U.S.C.A. § 1566. That goes no further than to say that an offender against that article—not other offenders—is to be liable to trial and sentence by a court-martial "As if he had not received such discharge nor been dis-

missed." The statement in the Manual is on its face contrary to and inconsistent with Article 38 and therefore finds in it no support. The President's prescriptions must be laid annually before Congress and presumably they have been but we can see no approval tacit or other in this in as much as the contrariety we have pointed out between the Manual and the Articles is evident and inspection or inspections or notice cannot relieve the Manual's fiat of its defect. The Articles were never changed. The President's indorsement was given also by him acting by virtue of the powers vested in him as President. Conceding the widest plenary power over soldiers in the army, Constitution, Article 2, § 2, Clause 1, determination of the conditions on which the individual may or must change his status from civilian to military is for the Congress, Article 1, § 8, Clauses .12 and 14, which has exercised that power throughout our history. The cancellation or recall of a discharge for fraud presents a justiciable issue that only a court may decide (Article 3), whether the fraud be such as to make the discharge void or such as to make it voidable. The very question whether it be void or voidable is an issue that only a court may decide. Any assertion of an arbitrary power to cancel or to recall it is made nugatory by the constitutional requirement of due process. The asserted approval of the Manual by the President therefore gave no life to the fiat we have quoted which is in whole or in part without any recognizable constitutional support.

The respondent also rests on Article of War 94, 10 U.S.C.A. § 1566. This article states that any one subject to military law defined by Article 2, 10 U.S.C.A. § 1473, who is convicted of perpetrating any of the claims or frauds against the United States recited in the article, may be punished by court-martial sentence. Such frauds are crimes for any one—civilian or soldier. 18 U.S.C.A. §§ 80–84. The section continues: "And if any person, being guilty of any of the offenses aforesaid while in the military service of the United States, receives his discharge or is dismissed from the service, he shall continue to be liable to be arrested and held for trial and sentence by a court-martial in the same manner and to the same extent as if he had not received such discharge nor been dismissed." Winthrop, in his "Military Law and Precedents" states his conviction that this statute is unconstitutional. Doubts of its constitutionality are expressed by Davis in his "Treatise on the Military Law". Its claim to constitutionality must rest upon the congressional powers to raise armies, Article 1, § 8, Clause 12, or to govern and regulate the land forces, Article 1, § 8, ·Clause 14, or the exception in the Fifth Amendment of "Cases arising in the land or naval forces." It cannot come under the power to raise armies because no one is incorporated in the army even for the purpose of trial by this statute whose draftsmen found the discharge insuperable and sought to by-pass it by subjecting a discharged veteran to trial by court-martial "in the same manner, and to the same extent as if he had not received such discharge." In any event a person discharged from his contract for military service who renders no military service, performs no military duty and receives no military pay is a civilian. He is certainly no longer a member of the army. 10 U.S.C.A. §§ 602–658. We can find no statute which says that he is or which makes him subject to recall. Service under § 658 is voluntary. Nor do we find necessary to this decision consideration of the subjection to military law of those persons described in 10 U.S.C.A. § 1473(d). It would appear therefore that the only basis for any claim that the statute is an exercise of the constitutional power of Congress must be made to depend on the exception in the Fifth Amendment of "Cases arising in the military and naval forces."

It was on an interpretation of this section that its constitutionality was once sustained. In re Bogart, 3 Fed.Cas.No. 1596, p. 796. The Court, in the Bogart case, accepted a dictionary definition of the word "cases" as events, though the Amendment itself is speaking of prosecutions, concluding therefrom that the actor in the event even though discharged before prosecution was included within the language of the exception and therefore subject to court-martial. This interpretation violates the

most pressing rule for constitutional construction, viz., that the provisions for the protection of life, liberty and property are to be largely and liberally construed in favor of the citizen, The Bogart case was accepted and automatically followed without consideration in Re Joly, D.C., 290 F. 858, and Terry v. United States, D.C., 2 F.Supp. 962. It appears from the record that the power given by the statute has thus far been exerted by the army to an inconsiderable extent. Davis, supra, p. 467—footnote. The statute has acquired importance with the enactment of the Mustering Out Payment Act, 38 U.S.C.A. § 691 et seq., and the occurrence of errors under that Act, which may subject discharged veterans like the relator to such charges before a court-martial as now confront him.

Contrary to the interpretation of the language of the Fifth Amendment in the Bogart case is the unmistakable language in which the Supreme Court in Ex parte Milligan, 4 Wall. 2, 18 L.Ed. 281, expressed its understanding of the language of the Fifth Amendment: "Every one connected with these branches of the public service is amenable to the jurisdiction which Congress has created for their government and *while serving* surrenders his right to be tried by the civil courts." What the word "cases" means in the judicial article of the Constitution—we recognize no difference in the use of the word in the third Article and its use in the Fifth Amendment—was stated in Re Pacific Railway Commission, C.C.Cal., 32 F. 241, 255, an interpretation fortified by statements of Justice Marshall and Justice Story, surely unexceptionable authorities on the meaning of the Constitution: "By cases and controversies are intended the claims of litigants brought before the courts for determination by such regular proceedings as are established by law or custom for the protection or enforcement of rights, or the prevention, redress or punishment of wrongs. Whenever the claim of a party under the constitution, laws, or treaties of the United States takes such a form that the judicial power is capable of acting upon it, then it has become a case." Under this definition a case has not arisen in the land forces if the soldier is discharged before complaint is framed or arrest made. In the face of these two decisions the conclusions of the Court in the Bogart case are erroneous. In Matter of Quirin, 317 U.S. 1, at page 41, 63 S.Ct. 2, at page 17, 87 L.Ed. 3, the Court assumed without deciding "That a trial prosecuted before a military commission created by military authority is not one 'arising in the land * * * forces', when the accused is not a member of or associated with those forces." The content of this assumption is restated at page 43 of 317 U.S., at page 18 of 63 S.Ct. The least meaning that can be attributed to this assumption is that it is presently an open question whether a discharged soldier can be tried by court-martial under the statute we are discussing. We feel obliged by the authorities we have cited (see also Mosher v. Hunter, 10 Cir., 143 F.2d 745) to hold that the respondents' court-martial has no jurisdiction of the relator. The writ is sustained and relator discharged.