KELLY, J.
odissenting). This Court has granted the prosecutor’s request to further weaken the Double Jeopardy Clause of the Michigan Constitution. The majority agrees with the prosecutor that the state’s Double Jeopardy Clause does not bar this Michigan prosecution, despite the fact that Kentucky has already convicted defendant of the same crime.
I dissent. Our decision in People v Cooper[1] provides the appropriate protection against double jeopardy to Michigan citizens and to others within the state’s jurisdiction. The majority decision presents yet another *170 instance in which this Court’s majority disagrees with existing precedent, gives it short shrift, and changes Michigan law. I strongly disagree with the majority’s choice to overrule Cooper.
This case does not present one of those rare occasions that requires reversing a previous decision of the Court. I would affirm the ruling of the Court of Appeals and, in doing so, I would follow this Court’s precedent in Cooper.
I. FACTS AND STATUS OF THE CASE
Defendant allegedly stole an acquaintance’s car or acquired it after someone else stole it in Michigan. He then drove the car to Kentucky, where he was arrested. By agreement with the Kentucky prosecutor, defendant pleaded guilty of attempted theft by unlawful taking or disposition of property valued at $300 or more. Ky Rev Stat Ann 514.030.
Later, defendant was charged in Michigan for the same car theft. The prosecutor accused him of unlawfully driving away a motor vehicle (UDAA), MCL 751.413, and receiving and concealing stolen property with a value of $1,000 or more but less than $20,000. MCL 750.535(3)(a). On defendant’s motion, the trial court quashed the information and dismissed the charges on the basis that they violated the Double Jeopardy Clause of the Michigan Constitution. Const 1963, art 1, § 15. The Court of Appeals affirmed the decision. People v Davis, unpublished opinion per curiam of the Court of Appeals, issued November 25,2003 (Docket No. 242207).
II. FEDERAL DOUBLE JEOPARDY JURISPRUDENCE
The United States Supreme Court determined in Bartkus v Illinois[2] that the Fifth Amendment’s Double *171 Jeopardy Clause[3] allows successive prosecutions by the federal and state governments.
But Bartkus rests on a questionable foundation. The opinion is premised on a concept of dual sovereignty that the United States Supreme Court began to recognize in dicta starting in the mid-nineteenth century.[4] The doctrine was not applied at common law. It was first utilized by the Court in 1922, in United States v Lanza, 260 US 377; 43 S Ct 141; 67 L Ed 314 (1922).
In 1937, the United States Supreme Court held that the Fourteenth Amendment did not incorporate the Fifth Amendment’s Double Jeopardy Clause against the states. Palko v Connecticut, 302 US 319; 58 S Ct 149; 82 L Ed 288 (1937), overruled by Benton v Maryland, 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969). In several earlier cases, the Court had allowed multiple state and federal prosecutions for the same offense. It had permitted the federal government to prosecute an offense for which a state court had already obtained a conviction. Lanza, supra at 382. Later, it had allowed states and the federal government to criminalize the same conduct. Westfall v United States, 274 US 256, 258; 47 S Ct 629; 71 L Ed 1036 (1927).
*172 Then, in 1959, the United States Supreme Court in Bartkus allowed a state prosecution to proceed after the defendant had been acquitted of the charged offense in a federal court. It found that the federal Double Jeopardy Clause did not prohibit state prosecutions for state criminal offenses.
The reasoning of these cases was based on the argument that the Fifth Amendment’s Double Jeopardy Clause was inapplicable to the states. Indeed, this was explicitly noted in Bartkus, in which Justice Frankfurter stated his view that the Fourteenth Amendment did not apply the first eight amendments to the states. Bartkus, supra at 124.
In 1969, the Supreme Court rejected the idea that the Fifth Amendment did not apply to the states through the Fourteenth Amendment. In Benton v Maryland,[5] the Court held that the Fifth Amendment protection is “a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment.” Benton, supra at 794. Because Bartkus was based on the belief that the Fifth Amendment had no application to the states, Benton undermined the reasoning of Bartkus.[6] See Smith v United States, 423 US 1303, 1307; 96 S Ct 2; 46 L Ed 2d 9 (1975) (Douglas, Circuit Justice).
*173 The weak underpinnings of the Bartkus line of cases is highlighted when one considers the common law on which our system of constitutional jurisprudence is based. As Justice Black noted in his vigorous Bartkus dissent, and as legal scholars continue to note,[7] the English common law did not recognize the concept of dual sovereignty.
Justice Black pointed out that protection from double jeopardy is part of the common law of nations. Bartkus, supra at 154 (Black, J., dissenting), citing Batchelder, Former Jeopardy, 17 Am L R 735 (1883). In fact, international law recognizes that multiple prosecutions by separate nations violate fundamental human rights.[8]
Post -Bartkus cases also raised questions regarding whether the dual sovereignty doctrine on which Bartkus was based would survive unscathed. For instance, in Elkins v United States,[9] the Court rejected the dual *174 sovereignty doctrine in the context of search and seizure. There, the Court held that where state authorities obtained evidence during a search that would have violated the Fourth Amendment, the evidence must be excluded at the federal level.
Likewise, in Murphy v Waterfront Comm of New York Harbor,[10] the Court refused to apply the dual sovereignty doctrine. It held that a state may not constitutionally compel a witness to testify when that testimony might be used against him in a federal prosecution. These decisions rejecting the application of the dual sovereignty doctrine in other contexts, coupled with the Benton decision, prompted comment by many courts, including the Cooper Court. The question was whether the dual sovereignty doctrine would continue to be applied in the double jeopardy context.
More recently, though, the United States Supreme Court has held that successive prosecutions by individual states do not violate the Fifth Amendment’s double jeopardy protection. Heath v Alabama, 474 US 82; 106 S Ct 433; 88 L Ed 2d 387 (1985). In Heath, the Supreme Court not only resurrected the dual sovereignty doctrine,'it extended the doctrine to successive prosecutions by different states. No matter how flawed the reasoning of Bartkus, then, the Supreme Court has validated it. It has verified that, under current federal law, the dual sovereignty doctrine allows for successive prosecutions when they are initiated by different sovereigns.
This Court clearly does not have the power to overrule United States Supreme Court precedent in interpreting the Double Jeopardy Clause of the United States Constitution. On the other hand, we are not *175 bound to adopt that Court’s analysis of the federal constitution when we interpret the Michigan Constitution. This is especially true when the analysis is flawed. While the Court’s decision regarding a similar constitutional provision provides guidance, the rights of Michiganians are not tied to what the Court chose to do with a federal constitutional provision.
Although the Michigan Supreme Court commented in Cooper on the direction it thought the United States Supreme Court was headed, it grounded its decision on an interpretation of the Michigan Constitution. This was fitting. When determining the rights guaranteed to people in Michigan under the Michigan Constitution, our Court is not bound by later interpretations given the federal constitution by federal courts.
m. THE MICHIGAN CONSTITUTION
This case is not about the federal constitution’s Fifth Amendment double jeopardy protection. It is about the double jeopardy protection provided by the Michigan Constitution to those within the jurisdiction of this state. The majority claims that it must determine whether we “correctly applied the doctrine of dual sovereignty in People v Cooper.” Ante at 160. The appropriate question is whether the Cooper decision correctly interpreted our state’s constitution. I assert that it did.
The Cooper Court rejected the United States Supreme Court’s one-sided view of dual sovereignty. The current majority suggests that the Cooper Court incorrectly applied dual sovereignty, whereas the Cooper Court specifically rejected it. Instead, it appropriately adopted a rule that balances the rights of the state with the fundamental rights afforded to the accused.
*176 As Justice Denise Johnson of the Vermont Supreme Court observed, “[W]e do not need a unique state source to justify our differences with the interpretation of the federal Constitution. The concept of sovereignty gives state courts the right and the justification to disagree.” Woltson, ed, Protecting Individual Rights: The Role of State Constitutionalism, Report of the 1992 State Judges Forum (1993), p 43, quoted in Shepard, The maturing nature of state constitution jurisprudence, 30 Val U L Rev 421, 439 (1996).
[O]ur courts are not obligated to accept what we deem to be a major contraction of citizen protections under our constitution simply because the United States Supreme Court has chosen to do so. We are obligated to interpret our own organic instrument of government. [Sitz v Dep’t of State Police, 443 Mich 744, 763; 506 NW2d 209 (1993).]
In interpreting the Michigan Constitution, “ ‘the provisions for the protection of life, liberty and property are to be largely and liberally construed in favor of the citizen.’ ” Lockwood v Comm’r of Revenue, 357 Mich 517, 557; 98 NW2d 753 (1959), quoting United States ex rel Flannery v Commanding Gen, Second Service Command, 69 F Supp 661, 665 (SD NY, 1946).
The Double Jeopardy Clause in the Michigan Constitution currently reads, “No person shall be subject for the same offense to be twice put in jeopardy.” Const 1963, art 1, § 15. To determine the parameters of this guarantee, we must examine the history of our state’s constitutional and common-law heritage.
Before reaching statehood, Michigan accepted the common law of England as part of its legal heritage. The common law was applied when Michigan was part of the province of Upper Canada in 1792. At that time, the legislature of Upper Canada repealed Canadian Law and declared that “resort should he had to the laws of *177 England as the rule for the decision of [real property and civil rights].” 1 Michigan Territorial Laws, Introduction, p viii (1871). Likewise, the Northwest Ordinance contained a provision indicating that the territories should apply the common law. Northwest Ordinance of 1787, art II.[11]
When the territory that would become Michigan shifted possession from England to the new United States of America, the common law remained. “It is a principle of universal jurisprudence that the laws, whether in writing or evidenced by the usage and customs of a conquered or ceded country, continue in force till altered by the new sovereign... . All that occurred here was the mere change of the sovereign power, which left all rights and laws as they had been." 1 Michigan Territorial Laws, Introduction, pp x-xi (1871). Furthermore, in 1795 the Governor and judges of the territory adopted an act declaring that the common law of England was the applicable law. Id. at xi-xii.
The common law of England held that protection from double jeopardy extended to prosecutions by other sovereigns. The practice in Great Britain in the seventeenth and eighteenth centuries was that prosecution by a different sovereign precluded England from retrying a defendant. See State v Hogg, 118 NH 262, 265-266; 385 A2d 844 (1978).
Michigan adopted its first constitution in 1835. At that time, its double jeopardy provision read, “No person for the same offense, shall be twice put in jeopardy of punishment.” Const 1835, art 1, § 12. In 1850, the state constitution was expanded and reworded to read, “No person after acquittal upon the *178 merits shall be tried for the same offense.” Const 1850, art 6, § 29. Constitutional convention notes from 1850 suggest that the proponent of this change considered it to be simply a clarification of the provision’s language.[12]
After the 1850 Constitution was ratified, the Michigan Supreme Court had occasion to interpret this new language. It determined that the phrase “after acquittal on the merits” did not mean that jeopardy attached only after a verdict was rendered. Writing for the Court, Justice COOLEY stated:
The present Constitution of this State was adopted in 1850, when all the tendencies of the day were in the direction of enlarging individual rights, giving new privileges, and imposing new restrictions upon the powers of government in all its departments. This is a fact of common notoriety in this State; and the tendencies referred to found expression in many of the provisions of the Constitution. Many common-law rights were enlarged, and given the benefit of constitutional inviolability; and if any were taken away, or restricted in giving new privileges, it was only incidentally done in making the general system more liberal, and, as the people believed, more just. Such a thing as narrowing the privileges of accused parties, as they existed at the common law, was not thought of; but, on the contrary, pains were taken to see that they were all enumerated and made secure. Some were added; and among other provisions adopted for that purpose was the one now under consideration. [People v Harding, 53 Mich 481, 485-486; 19 NW 155 (1884).]
The Harding Court, therefore, determined that the language used in the 1850 Constitution was meant to expand the rights our state’s citizens had at common *179 law. At common law, a person could be retried after an acquittal on the merits if the first court lacked jurisdiction. The language of the 1850 Constitution was intended to preclude this “great hardship.” Id. at 486. “It was meant to give a privilege not existing at the common law; it had no purpose to take away any which before existed.” Id.
A constitutional convention was next called in 1908, but that convention left the language of the double jeopardy provision untouched. During the 1961 constitutional convention, the double jeopardy provision again received attention. The convention notes suggest that the delegates were concerned only with the issue of when jeopardy attached. The actual language of the state constitution’s double jeopardy provision indicated that the protection did not attach until a verdict of acquittal had been rendered. Yet, in Harding, the Michigan Supreme Court had determined that jeopardy attached long before the rendering of a verdict.
The delegates’ discussion revolved solely around conforming the language regarding when jeopardy attached to the interpretation the Michigan courts had given it:
Mr. Stevens: Mr. Chairman and delegates, the original wording of this was: “No person, after acquittal upon the merits, shall be tried for the same offense.” The Supreme Court of Michigan, however, has virtually held that this means the same thing as the provision in the federal constitution[13] which is what we have put in: “No person shall be subject for the same offense to be put twice in jeopardy.”
*180 It is true that in the opinion of some of the jurists of the state this might make it a little bit easier for the state to appeal in some cases. Otherwise it makes no difference except it brings the provision of the constitution more clearly into the practice of this state. [1 Official Record, Constitutional Convention 1961, p 539.]
And later, Delegate Stevens noted:
You would think from reading this, probably — and that is a matter of clarification — a layman might think that only after a person has been acquitted on the merits has he been put in jeopardy. That is not the fact under the decisions of the Michigan supreme court. He is better protected than that. There is nothing in here that I believe can be construed to in any way delete or reduce the rights of the defendant. [1 Official Record, Constitutional Convention 1961, p 540.]
Reference was made to the similarity between* the proposed provision and the language of the United States Constitution, the delegates noting that “[t]he wording which we propose is that which is found in the vast majority of state constitutions.” 1 Official Record, Constitutional Convention 1961, p 540 (Delegate Danhof). However, nothing suggests that they meant by the similarity in wording that all aspects of the Double Jeopardy Clause would be construed the same as other sovereigns’ clauses, either then or afterward.
The only discussion at the convention centered on conforming the language of Michigan’s Double Jeopardy Clause to the interpretation Michigan courts had given to that language. Silence regarding other aspects of the protection should not be construed to mean that the delegates considered federal case law the definitive authority regarding the meaning of our state provision. Rather, this silence should be taken to mean what it more likely signifies: a lack of consideration of any of *181 the aspects of double jeopardy protection beyond the question of when jeopardy attaches.
This specific concern was carried through to the people when they voted on the new constitution. The Address to the People contains the following language:
This is a revision of Sec. 14, Article II, of the present constitution. The new language of the first sentence involves the substitution of the double jeopardy provision from the U.S. Constitution in place of the present provision which merely prohibits “acquittal on the merits.” This is more consistent with the actual practice of the courts in Michigan. [Emphasis added.]
In addition, the preface to the Address to the People states, “Traditional liberties and rights of the people were carefully reviewed and changes made are in the direction of clarifying and strengthening them.” (Emphasis added.)
Given the full history of our constitution, and the history of the 1961 constitutional convention, several things are clear. First, the sole concern in revising the Double Jeopardy Clause in our state constitution was to clarify that jeopardy attaches when a jury is sworn, as our courts had interpreted. It does not attach when a verdict is issued, as appeared from the language of the 1908 Constitution. Second, the language regarding the United States Constitution in the Address to the People simply informs us from where that language was derived.
The change in the Double Jeopardy Clause in the 1963 Constitution did not signal the people’s intent to adopt the United States Supreme Court’s interpretation of all aspects of double jeopardy protection, past and future. Instead, the people intended to ratify what the Michigan courts had already held with regard to when jeopardy attaches.
*182 Despite the history outlined above, the majority in People v Nutt[14] took this language to mean that the people intended to adopt the federal interpretation of the Double Jeopardy Clause. It assumed that the people knew what the United States Supreme Court had interpreted the federal Double Jeopardy Clause to mean, and that they agreed with it. It assumed that they were willing to accept all future interpretations that the federal courts applied to it. It assumed that they willingly gave away their sovereignty as a people and as a state by allowing the federal government to interpret our constitution for us.
I cannot agree with all those assumptions. I do not presume that the voters of our state intended that Michigan’s Double Jeopardy Clause would be interpreted exactly as the federal provision is interpreted.
I have reviewed our common-law history before we became a state, our state’s constitutional history, and the language in the Address to the People. It has become obvious to me that the people intended that the language of the state Double Jeopardy Clause was intended to mean what Michigan courts had said it means. See Harding, supra.
The holding in Cooper was grounded on the Michigan Constitution. This was specifically recognized in People v Gay,[15] in which the Cooper decision was reaffirmed and given retroactive effect. As Justice LEVIN noted, Cooper was a “reasoned and careful” analysis of the state constitution. People v Mezy, 453 Mich 269, 299; 551 NW2d 389 (1996) (LEVIN, J, dissenting).
Cooper protects the rights of Michigan’s citizens. Unlike federal jurisprudence, it requires that the gov *183 ernment balance those individual rights with the state’s interest in preserving the public peace and protecting the public safety. Cooper held that Michigan’s rights as a sovereign were generally vindicated when a defendant was brought to justice in another jurisdiction. But, it also recognized that there would be times when another sovereign’s prosecution would not validate Michigan’s interests. In those rare cases, Cooper allowed a successive prosecution:
Const 1963, art 1, § 15 prohibits a second prosecution for an offense arising out of the same criminal act unless it appears from the record that the interests of the State of Michigan and the jurisdiction which initially prosecuted are substantially different. Analysis on a case-by-case basis cannot be avoided. [Cooper, supra at 461.]
The balancing test of Cooper protects a person’s rights “to avoid (1) continued embarrassment, expense and ordeal; (2) being compelled to live in a continuing state of anxiety and insecurity; and (3) the possibility that even though innocent he may be found guilty through repeated prosecutions.” Cooper, supra at 460, citing United States v Wilson, 420 US 332, 343; 95 S Ct 1013; 43 L Ed 2d 232 (1975), and Green v United States, 355 US 184, 187-188; 78 S Ct 221; 2 L Ed 2d 199 (1957).
The facts that a court should consider in applying the Cooper balancing test include
whether the maximum penalties of the statutes involved are greatly disparate, whether some reason exists why one jurisdiction cannot be entrusted to vindicate fully another jurisdiction’s interests in securing a conviction, and whether the differences in the statutes are merely jurisdictional or are more substantive. [Cooper, supra at 461.]
The Cooper Court’s rejection of the dual sovereignty doctrine as a basis for allowing successive prosecutions, *184 without reference to the defendant’s fundamental interest in being free from double jeopardy, was unanimous.[16]
The majority uses Heath to attack the holding in Cooper. But Cooper does not rest on the decisions of the United States Supreme Court interpreting the federal constitution. It rests on the Michigan Constitution. It depends on balancing the interest of the state in curbing criminal activity with the liberty interests of those within its jurisdiction. Gay, supra at 693-694.
As discussed, this is perfectly consistent with the intent of the 1961 constitutional convention delegates and with the intent of the people. Given the rejection of the Bartkus one-sided approach to dual sovereignty, later cases such as Heath that apply the same one-sided approach have no bearing on whether Cooper was correctly decided. The Cooper rule is necessary to protect the individual’s interest, as well as the state’s interest in rare cases where the state’s interest is not vindicated by another sovereign’s prosecution.
The defendant here is being forced to undergo multiple ordeals when he should be able to rely on the finality of his prosecution in Kentucky. He had an expectation that his guilty plea in Kentucky would end governmental action against him involving the car theft. Instead, the Kentucky guilty plea can now be used against him in the Michigan proceeding. Defendant will again be punished for the same activity for which he has already been punished in Kentucky.
*185 Cooper specifically directs a case-by-case inquiry of whether the state’s interests have been met. Cooper, supra at 461. It allows successive prosecutions when the interests of the two states are substantially different. The court considers the maximum penalties available, facts indicating that the other jurisdiction cannot be trusted to vindicate fully Michigan’s interests, and whether the statutory differences are substantive or “merely jurisdictional.” Id.
There is no evidence in the record before us that Michigan’s interests have not been adequately protected by the proceedings in Kentucky. Defendant pleaded guilty in Kentucky to attempted theft of property having a value of more than $300. He was sentenced to one year’s probation.
Defendant is charged in Michigan with UDAA and receiving stolen property worth $1,000 or more. These crimes are felonies punishable by not more than five years’ imprisonment. Similarly, the Kentucky statute makes theft of property with a value of more than $300 a felony punishable by not more than five years’ imprisonment. See Ky Rev Stat Ann 514.030 and 532.020(l)(a).
To conserve trial resources, Michigan prosecutors frequently offer a “plea bargain” to a defendant to plead guilty to a lesser offense. The Kentucky prosecutor’s willingness to offer defendant a plea to a lesser offense cannot be said to undermine our state’s interests. Furthermore, the Michigan prosecutor in this case does not argue that Michigan’s interests were compromised.
The facts of this case serve to show that Cooper is not, in fact, unworkable. The interests sought to be protected by each state’s law are not substantially different. The interests of the state of Michigan are amply protected, while the interests of the individual *186 are not ignored. The Double Jeopardy Clause was written not to protect the state or federal government, but to protect the individual.
To hold that Michigan will allow prosecution in our state after a federal or sister state prosecution for the identical act is to embrace a system of constitutional duality. It enables a state to pursue a person who either has been found innocent or has paid the price for his crime to another sovereignty. To harass the innocent, the acquitted, or the guilty person who has paid the price for a crime in money or freedom is not compatible with constitutionally legitimate state action. To the contrary, it is at just such harassment that our state constitution takes aim.
The policy that weakens double jeopardy protections is not validated because both state and federal sovereignties combine to embrace it. It is incongruous to allow a state’s basic constitutional policy, one integral to its sovereignty, to be frustrated as a consequence of the duality that allows that state to exist. Furthermore, it is inconsistent and ironic to use that federalism, which has been justified in the name of protecting freedom, to obliterate a fundamental right.
Rarely are Michigan’s interests not vindicated after one fair test of guilt. Normally, the cause of justice is not served in the second pursuit of one who has been subjected to jeopardy for the same act in a different jurisdiction. To hold otherwise is to require an accused either to prove innocence twice or to pay twice for the same offense. The sole rationale for it is that the acts complained of took place where two layers of government coincide.
For almost thirty years, Cooper and its progeny have protected citizens and others subject to the jurisdiction of this state from the risk of
*187 (1) continued embarrassment, expense and ordeal; (2) being compelled to live in a continuing state of anxiety and insecurity; and (3) the possibility that even though innocent [we] may be found guilty through repeated prosecutions. [Gay, supra at 694, citing Wilson, supra at 343, and Green, supra at 187-188.]
See also People v Herron, 464 Mich 593, 601; 628 NW2d 528 (2001). Cooper correctly held that Michigan’s Double Jeopardy Clause protects us from multiple prosecutions for the same crime. That protection exists as long as the state’s interest is protected by a prosecution for the crime in another state or by the federal government. The Court in Cooper did not need to find a “different history behind Michigan’s adoption of a double jeopardy bar”[17] to conclude that the Michigan Constitution protects us from multiple prosecutions for a single crime. As explained, that protection has been a bedrock principle of our common law for decades.
IV FOURTEENTH AMENDMENT DUE PROCESS
The right to be free from double jeopardy is a fundamental right
deeply ingrained in at least the Anglo-American system of jurisprudence .... [T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. [Green, supra at 187-188.]
As Justice Black once observed, “double prosecutions for the same offense are so contrary to the spirit of our *188 free country that they violate even the ... Fourteenth Amendment.” Bartkus, supra at 150-151 (Black, J., dissenting).
Justice Black recognized that, from an individual’s perspective, multiple punishments inflict the same injustice whether levied by officers wearing one uniform or several. “In each case.. . [one] is forced to face danger twice for the same conduct.” Bartkus, supra at 155 (Black, J., dissenting).
It is incompatible with fundamental justice that a person who has already faced trial in another court system should again be exposed to jeopardy in Michigan’s courts. The dual threat from the single act is “repugnant to the conscience of mankind.” See Palko, supra at 323. If the essence of due process, fairness, is to be recognized, one of its features must be this guarantee: a person may be exposed to the gauntlet of criminal proceedings only once for the same misconduct.
It does not matter to the individual that two separate sovereigns are responsible for the proceedings. What matters is that the government has resources and power the individual does not. Therefore, the government should not be
allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. [Green, supra at 187-188.]
The Due Process Clause of the Fourteenth Amendment of the United States Constitution requires a recognition that subjecting an individual to a second trial violates the fundamental fairness due every citizen of the United States.
*189 V THE DOCTRINE OF STARE DECISIS
“[S]tare decisis ‘promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.’ ” [United States v Int’l Business Machines Corp, 517 US 843, 856; 116 S Ct 1793; 135 L Ed 2d 124 (1996), quoting Payne v Tennessee, 501 US 808, 827; 111 S Ct 2597; 115 L Ed 2d 720 (1991). See also People v Petit, 466 Mich 624, 633; 648 NW2d 193 (2002).]
To overturn a previous decision of this Court, we must be convinced that it was wrongly decided. In addition, we must conclude that greater injury will result from adhering to it than from correcting it. Petit, supra at 634, citing McEvoy v Sault Ste Marie, 136 Mich 172, 178; 98 NW 1006 (1904). A departure from precedent must be based on a “ ‘ “special justification.” ’ ” Dickerson v United States, 530 US 428, 443; 120 S Ct 2326; 147 L Ed 2d 405 (2000), quoting Int’l Business Machines Corp, supra at 856, quoting Payne, supra at 842 (Souter, J., concurring), quoting Arizona v Rumsey, 467 US 203, 212; 104 S Ct 2305; 81 L Ed 2d 164 (1984).
Nine years ago, Justice Weaver’s lead opinion in Mezy indicated a desire to overrule Cooper. Her position did not gain the support of a majority of the justices. The only change that could explain today’s decision to overrule Cooper is the change in the make-up of this Court. Justice Levin’s criticism in Mezy[18] of the lead opinion’s desire to overrule Cooper is just as applicable today as it was when written. There has been no intervening showing that Cooper was clearly erroneous.
*190 The majority claims that Cooper is bad law. Its reason is that the Cooper Court did not apply the doctrine of dual sovereignty as articulated by the United States Supreme Court and that it misconstrued where the United States Supreme Court was headed.
Yet, although Cooper alluded to the track the United States Supreme Court appeared to be taking, it specifically noted that its decision was based on the Michigan Constitution. This majority’s constrictive reading of the double jeopardy rights our constitution provides disagrees with the Cooper approach. It overrules Cooper without showing in what respect the Cooper analysis of our state Double Jeopardy Clause is wrong.
This lack of an explanation is understandable when one considers that there is nothing unworkable about Cooper. The majority asserts that less injury will result from overruling Cooper than from allowing it to stand. I believe that less injury will result only if one assumes that everyone accused of a crime is guilty. More injury will result to those our criminal justice system has been created to protect, those who are falsely accused. Hereafter, if one sovereign prosecutes and the accused is found not guilty, the sovereign may work with Michigan to achieve what it could not, secure conviction.
The majority’s approach ignores the fact that, by overruling a dozen or more cases each term, it destabilizes our state’s jurisprudence. It suggests to the public that the law is at the whim of whoever is sitting on the Supreme Court bench, Surely, it erodes the public’s confidence in our judicial system. Less harm would result from retaining Cooper than from reversing it.
VI. CONCLUSION
Because I believe that Cooper provides the correct framework, based on the Michigan Constitution, for *191 resolving double jeopardy concerns, I would affirm the decision of the Court of Appeals.
I disagree with the majority that Cooper must fall. The Cooper decision was not incorrect when it was decided or when its holding was unanimously reaffirmed by this Court in Gay. It is not incorrect today. Greater injustices will come from its abandonment than from its retention.
One cannot but wonder if this departure from precedent will encourage the people of Michigan to “adjust themselves to all other violations of the Bill of Rights should they be sanctioned by this Court.” Bartkus, supra at 163 (Black, J., dissenting).
Overturning Cooper strikes at the integrity of our justice system. It represents a greater threat to public security than it does a protection from criminals. The decisions in Cooper and Gay and the Court of Appeals decision in this case should be upheld.

 398 Mich 450; 247 NW2d 866 (1976).

 359 US 121; 79 S Ct 676; 3 L Ed 2d 684 (1959).

 The relevant portion of the federal Double Jeopardy Clause reads, “nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb ...US Const, Am V

 See Fox v Ohio, 46 US 410; 12 L Ed 213 (1847) (a state may prosecute for passing false coin; the federal government may prosecute for counterfeiting; the former is a private wrong, while the latter is an offense directly against the federal government); United States v Marigold, 50 US 560; 13 L Ed 257 (1850) (federal statute and federal prosecution for uttering false coinage was constitutionally permissible); Moore v Illinois, 55 US 13; 14 L Ed 306 (1852) (Illinois law and federal fugitive slave law dissimilar in essential purpose, definition of the offenses, and type of punishment each statute authorized).

 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969).

 At least one commentator has recognized the paradox created by the dual sovereignty doctrine:
The doctrine of selective incorporation, which makes the Double Jeopardy Clause applicable to the states,... depends upon the rationale that by enacting the Fourteenth Amendment the states surrendered a part of their sovereignty to the federal government. Yet, the dual sovereignty doctrine maintains that both the states and the federal government, bound by the same Double Jeopardy Clause because of their shared sovereignty, are separate sovereigns for purposes of assessing possible violations of *173 the Clause. See, e.g., Heath, 474 U.S. [82; 106 S Ct 433; 88 L Ed 2d 387 (1985)]. [McAninch, Unfolding the law of double jeopardy, 44 SC L R 411, 425 n 104 (1993).]

 See, for example, Comment, The dual sovereignty exception to double jeopardy: An unnecessary loophole, 24 U Balt L R 177, 180 (1994), citing Comment, Successive prosecution by state and federal governments for offenses arising out of the same act, 44 Minn L R 534, 537 n 18 (1960); Harrison, Federalism and double jeopardy: A study in the frustration of human rights, 17 U Miami L R 306 (1963); Grant, Successive prosecutions by state and nation: Common law and british empire comparisons, 4 UCLA L R 1 (1956).

 See, e.g., International Covenant on Civil and Political Rights, art 14(7), 999 UNTS 171, 177 (1976). A nation may not extradite a person if doing so would expose that person to subsequent prosecution for the same crime. 1 Restatement Foreign Relations Law of the United States, 3d, § 476(l)(b), p 566. The protection from double jeopardy has been a part of our western civilization since at least Greek and Roman times and is a “ ‘universal maxim of common law.’ ” Bartkus, supra at 151-153 (Black, J., dissenting), quoting 2 Cooley, Blackstone’s Commentaries (4th ed, 1899), p 1481.

 364 US 206; 80 S Ct 1437; 4 L Ed 2d 1669 (1960).

 378 US 52; 84 S Ct 1594; 12 L Ed 2d 678 (1964).

 The 1783 Treaty of Paris finalized the boundaries between Canada and the United States.

 “Mr. C. [Delegate Crary] said he considered the language used in the section indefinite, and his amendment merely proposed language more definite and better understood.” Report of the Proceedings and Debates in the Convention to Revise the Constitution of the State of Michigan, p 58 (1850).

13 Interestingly, while this characterized the Michigan provision as meaning “virtually.. . the same thing as the provision in the federal constitution” with regard to when jeopardy attached, the Harding Court made no reference to the federal constitution. Its holding was grounded in our state’s unique constitutional history.

 469 Mich 565; 677 NW2d 1 (2004).

 407 Mich 681, 710-711; 289 NW2d 651 (1980).

 Justice Coleman concurred in the result, but believed that Michigan should apply the “same-elements” test for determining when successive prosecutions are brought for the same offense. Cooper, supra at 463 (Coleman, J., concurring). In Gay, the Court unanimously agreed that the Cooper decision was entitled to retroactive application.

 Ante at 164.

 Because three justices indicated that they would overrule Cooper even though reaching the issue was unnecessary, three other justices explained why they would not overrule the case. Justice Brickley simply indicated that Cooper need not be addressed by the Court.